COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Retired Judge Kulp*
Argued at Richmond, Virginia


JOHN CARLTON CARTER, JR.

                           MEMORANDUM OPINION** BY
v.   Record No. 2445-98-2      JUDGE ROBERT J. HUMPHREYS
                               AUGUST 22, 2000

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

John W. Luxton (Morchower, Luxton & Whaley,
on brief), for appellant.

Richard B. Smith, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


John C. Carter, Jr. ("Carter") complains that the trial

court erred in failing to suppress evidence seized following a

search of his person by a Henrico County police officer.  For

the reasons that follow, we affirm the decision of the trial

court.

I.  BACKGROUND

On December 12, 1997 at approximately 2:20 p.m.,

Investigator Richard Palkovitz was traveling southbound on

---

* Retired Judge James E. Kulp took part in the consideration
of this case by designation pursuant to Code § 17.1-400,
recodifying § 17-116.01.

** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Laburnum Avenue in Henrico County when a vehicle operated by Carter pulled out from Delmont Street, across Laburnum, and stopped, partially blocking the traffic lane occupied by Palkovitz, who was forced to brake abruptly and narrowly avoided a collision with Carter's vehicle.

Palkovitz approached Carter's vehicle, requested Carter's driver's license and registration and returned to his vehicle to write a summons. Carter remained in his vehicle during this time.

Palkovitz determined by radio that Carter was not wanted for any outstanding criminal warrants but did have a prior criminal drug history. Officer Kita Brown then arrived on the scene and advised Palkovitz that she had just seen Carter standing with a group on a "high drug corner" in Essex Village, an area known for serious problems with guns and drugs. Brown told Palkovitz that as she drove by the corner, Carter "made kind of quick, nervous glancing views at her."

After receiving this information, Palkovitz returned to Carter's vehicle and asked him to get out of the car. He then returned Carter's license and registration and asked Carter to sign the summons.

After Carter signed the summons, Palkovitz started talking to him about the problem of guns and drugs in Essex Village. Carter denied that he was carrying either drugs or weapons.

-

Palkovitz then asked if he could search Carter, and Carter responded by raising his arms and saying, "[G]o ahead."

Upon searching Carter, Palkovitz found a wad of folded currency totaling $796 in Carter's front pants pocket. Inside the folded currency, Palkovitz discovered a plastic baggie containing what he suspected to be, and which a scientific analysis proved to be, heroin.

Palkovitz testified that he instructed Carter to step out of his vehicle because, based upon the information he received from Officer Brown and Carter's prior drug history, he wanted to satisfy himself that there were no bulges in Carter's clothing which might suggest he was armed. Palkovitz further testified that he intended to ask Carter for consent to search, that he did not draw his own weapon, and that his vehicle's emergency lights were not activated at the time he returned Carter's license and registration to him.

## II. ANALYSIS

When we review a trial court's denial of a suppression motion, "[w]e review the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we "review findings of

-

historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

"Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations:  (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause."  Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citation omitted).

Carter concedes that Palkovitz had the authority to ask him to step out of his car during the traffic stop.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), and Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 127-28 (1998). He argues, however, that the request was improper because Palkovitz made his request after the summons was written and signed.

Here, the purpose of the stop was the citation of Carter for a traffic offense.  A consensual encounter can follow a

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'"  McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (en banc) (citations omitted).

-

legitimate detention.  See United States v. Rusher, 966 F.2d

868, 877 (4th Cir. 1992).[2]  While a detention

> usually must last no longer than is
> necessary to effectuate the purpose of the
> stop . . . lengthening the detention for
> further questioning beyond the initial stop
> is permissible in two circumstances.  First,
> the officer may detain the driver for
> questioning unrelated to the initial stop if
> he has an objectively articulable suspicion
> that illegal activity has occurred or is
> occurring.  Second, further questioning
> unrelated to the initial stop is permissible
> if the initial detention has become a
> consensual encounter.

United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999)

(citations omitted).  Without some indicated restraint, mere

questioning by officers when a routine traffic stop is over and

its purpose served, does not amount to a seizure under the

Fourth Amendment.  See United States v. Sullivan, 138 F.3d 126,

131 (4th Cir. 1998).

---

[2] Recently, in Reittinger v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (2000), the Supreme Court of Virginia held that the police unlawfully seized the defendant following their investigation of a traffic infraction.  There, the Court's opinion focused on the following factors in determining that the defendant was illegally detained:  (1) the deputy sheriffs stopped the defendant in a rural area at nighttime, (2) two armed deputies, one on each side of the defendant's vehicle, confronted him, and (3) one deputy asked the defendant for consent to search three times.  See id. at ___, ___ S.E.2d at ___.  At a minimum, factors (1) and (3) are not present in Carter's case.  Accordingly, we disagree with the dissent and find that Reittinger is not controlling in this case.  Nor do we believe that Reittinger was intended to eviscerate the basic principle that a consensual search can follow a legitimate detention, in light of the Supreme Court's refusal in Ohio v. Robinette, 519 U.S. 33 (1996), to adopt a per se rule prohibiting such encounters.

-

Further, "not all personal intercourse between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  A Terry stop occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."  Id.

As the Commonwealth notes, the facts of this case are virtually identical to those found in Ohio v. Robinette, 519 U.S. 33 (1996), where the United States Supreme Court held that a consensual encounter may immediately follow the issuance of a traffic summons without violating the Fourth Amendment.  In Robinette, the Supreme Court rejected a bright line rule that would have required police officers to advise citizens stopped for traffic offenses that they were free to go before the officers attempted to engage in consensual interrogations.  Rather, the Supreme Court held that "[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary and '[v]oluntariness is a question of fact to be determined from

-

all the circumstances.'"  <u>Id.</u> at 40.  Here, the trial court found that the search was consensual.  Taking the evidence in the light most favorable to the Commonwealth, which prevailed below, we cannot say that this finding was erroneous.

<u>Affirmed.</u>

Benton, J., dissenting.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). "While law enforcement officers may engage in consensual encounters with citizens, the Supreme Court has limited such encounters to those in which 'a reasonable person would feel free "to disregard the police and go about his business."'" Reittinger v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (2000) (citations omitted).

When the officer asked John C. Carter, Jr., to leave his car to sign the summons, the officer did so only for the express purpose of prolonging the encounter and delaying Carter's departure. After Carter signed the summons, the officer did not tell Carter he was free to leave. Instead, the officer immediately began to interrogate Carter concerning narcotics. He asked Carter if he "had any guns or drugs." Although the reason for the initial stop had ended, the officer continued the detention by making inquiries unrelated to the initial stop.

This inquiry concerning guns and drugs was an unconstitutional extension of the original traffic stop.

> The officer: "may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the

-

> car, he must be allowed to proceed on his
> way, without being subject to further delay
> by police for additional questioning."  Any
> further detention for questioning is beyond
> the scope of the Terry stop and therefore
> illegal unless the officer has a reasonable
> suspicion of a serious crime.

United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir. 1992)

(citation omitted).

All further questioning by the officer after Carter signed

the summons was unlawful.  Carter was not free to leave.  When

the officer began interrogating Carter, he did not tell Carter

he could leave.  The officer's immediate transition into the

inquiry was so seamless that a reasonable person would not have

believed the initial seizure had ended.  See Florida v. Royer,

460 U.S. 491, 502-03 (1983).

> [T]he events that transpired immediately
> [after Carter signed the summons] . . .
> would suggest to a reasonable person that
> . . . [he or she was not free to leave].  We
> do not think that a reasonable person, under
> the circumstances, would have considered
> that he was free to disregard the [officers]
> and simply drive away.

Reittinger, ___ Va. at ___, ___ S.E.2d at ___.

An officer cannot satisfy these constitutional concerns by

simply testifying that the detainee was "free to go."  If, as in

this case, the officer did not tell the person he was free to

leave and the officer's subsequent words or conduct conveyed a

contrary message, no reasonable person would consider that he or

she, having been detained by the officer, could simply go away.

-

See id.; Royer, 460 U.S. at 502-03 (noting that Royer "was never informed that he was free to board his plane if he so chose"). Therefore, because the officer had completed the traffic investigation, I would hold that the inquiry concerning the drugs and weapons unlawfully extended the seizure.

The officer lacked probable cause or a reasonable articulable suspicion to detain Carter for this interrogation and further inquiry. By his own testimony, the officer detained Carter only to obtain "consent" to search. The officer's actions subjected Carter to a new and unrelated inquiry under circumstances such that a reasonable person would not have believed the initial seizure had ended and that he or she was free to leave. See Toliver v. Commonwealth, 23 Va. App. 34, 37, 473 S.E.2d 722, 724 (1996) (Benton, J., concurring). Moreover, the principle is well established that an alleged consent derived from a person illegally detained is invalid. See Royer, 460 U.S. at 507-08.

For these reasons, I would hold that the trial judge erred in refusing to suppress the evidence. See Deer v. Commonwealth, 17 Va. App. 730, 736-37, 441 S.E.2d 33, 37-38 (1994). Accordingly, I would reverse the conviction.

-