## CIRCUIT COURT OF ARLINGTON COUNTY

Commonwealth of Virginia

v.

James Kadison

January 14, 2004

Case No. CR03-394

BY JUDGE JAMES F. ALMAND

This case presents the question of whether statements made by the Defendant, James Kadison, are admissible against him in his trial on the charge of Obstruction of Justice. The Court initially suppressed the statements on August 21, 2003. Upon the Commonwealth's Motion for Reconsideration, the Court reviewed the briefs of counsel, the transcript of the initial hearing and considered the arguments of counsel and now holds the statements admissible.

### Facts

On September 1, 2002, Officer Bryk was working as the "chase car" near a DUI checkpoint on Route 50 in Arlington. The role of the chase car is to observe any cars "making improper illegal moves such as improper turns, stopping on the highway and what-not, trying to avoid the checkpoint." Tr. at 13. In the early hours of the morning, Officer Bryk observed Mr. Kadison's car approach his position prior to the checkpoint. Mr. Kadison, heading westbound, made a U-turn across the double yellow lines of Route 50, and continued going eastbound. Tr. at 16.

When Officer Bryk stopped Mr. Kadison's vehicle, he observed a handgun "sitting in the front passenger seat." Tr. at 17. After asking several initial questions regarding the handgun, Officer Bryk asked Mr. Kadison to step out of his car and patted him down. Tr. at. 17-18. After the pat-down, Officer Bryk continued to ask Mr. Kadison questions regarding the U-turn and the handgun. During the course of his questioning, Officer Bryk discovered that Mr. Kadison was the same individual who had been through the DUI checkpoint earlier in the evening. Officer Bryk testified that Mr. Kadison stated that he was "investigating checkpoints" because he believes that such checkpoints are unconstitutional, and that he specifically made the U-turn in order to "see if there was a chase car there." Tr. at 20.

Officer Bryk continued to speak with Mr. Kadison "off and on" while he radioed for other officers. Tr. at 20. Mr. Kadison asked if he was free to leave and was told that he was not. Tr. at 37-38. Despite the fact that he was not allowed to leave, Mr. Kadison was not handcuffed while Officer Bryk spoke with him, nor when other officers arrived at the scene. Based on Mr. Kadison's actions, statements, and earlier visit to the checkpoint, he was arrested for Obstruction of Justice under Va. Code § 18.2-460 and taken into custody.

## Discussion

The issue before the Court is whether Mr. Kadison was in custody for Fifth Amendment purposes. If so, Officer Bryk was required to read Mr. Kadison *Miranda* warnings before questioning him further. The Court finds that Mr. Kadison was not in custody and that the stop and Officer Bryk's questioning fall within the category of brief investigatory stops that allow questioning without the protections of *Miranda*.

While a traffic stop is recognized as a seizure under the Fourth Amendment, *Delaware v. Prouse*, 440 U.S. 648 (1979), it is not automatically a custodial detention for Fifth Amendment purposes. *United States v. Sullivan*, 138 F.3d 126 (4th Cir. 1998). The "non-coercive aspect of ordinary traffic stops ... [leads to the conclusion that] persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

An officer is entitled to briefly detain an individual and ask investigatory questions if he believes that there is a "reasonable articulable suspicion" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also Stockdale v. Commonwealth*, No. 1732-95-3 (Va. App. Oct. 15, 1996). Such suspicion can arise out of a routine traffic stop, and the reasonableness of the stop is

evaluated under a totality of the circumstances standard. *Bass v. Commonwealth*, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). Even though the traffic stop was the initial basis for the stop, the situation can lead to an officer developing additional suspicions regarding criminal activity that is distinct from the traffic stop itself. Officers are allowed to briefly detain an individual after the traffic stop has ended or while the traffic stop is ongoing to ask investigatory questions to determine whether their suspicions about the additional suspected criminal activities are correct. *Dickerson v. Commonwealth*, 266 Va. 14 581 S.E.2d 195 (2003). *See also, Savage v. Commonwealth*, No. 799-02-1 (Va. App. Apr. 1, 2003) (defendant initially stopped because his vehicle did not have a front license plate and was ultimately charged with drug and weapons crimes based on indicia of criminal activity observed by the officer conducting the stop); *Harris v. Commonwealth*, 266 Va. 28, 581 S.E.2d 206 (2003) (defendant initially stopped because his vehicle had a broken license plate light and was ultimately charged with two counts of grand larceny).

Officer Bryk testified that he was investigating several matters presented by Mr. Kadison's presence on Route 50 that evening. Officer Bryk was investigating the reasons for the U-turn as well as the presence of a handgun on the front passenger seat.[1] His suspicions were further raised by Mr. Kadison's "legalese" answers about the checkpoint and his specific statements regarding his intentions vis-a-vis the chase car. Tr. at 43-44. Officer Bryk's questions were directly related to his suspicions that Mr. Kadison was the same individual who had been through the checkpoint at an earlier point in the evening. Indeed, Mr. Kadison stated that he would "continue to investigate the checkpoint" if allowed to go on his way. Tr. at 28-29. At this point, the stop transformed from a traffic stop stemming from a U-turn into an investigation regarding possible obstruction of justice relating to the checkpoint. Officer Bryk was entitled to investigate this matter, in as brief and unintrusive a manner as possible, without giving *Miranda* warnings.

While Mr. Kadison was asked to step out of his vehicle and was in the presence of several officers who informed him that he was not free to leave the scene, this still does not rise to the level of custodial arrest necessitating *Miranda*. The law is clear that even with the most routine of traffic stops that result in nothing more than a citation for the traffic offense, drivers are "not free to leave the scene of a traffic stop without being told they might do so." *Berkemer*, 468 U.S. at 437. Even though an individual knows that he is not

---

[1] Mr. Kadison had a valid concealed weapons permit. Tr. at 36. Additionally, Virginia is a "plain view" jurisdiction, allowing a weapon to be so openly displayed.

free to leave, additional factors are needed in order to rise to the level of physical restraint equating custody. *Bailey v. Commonwealth*, No. 2767-02-1, at (Va. App. Nov. 25, 2003).

Whether an individual is effectively in custody for *Miranda* purposes is also evaluated by examining the totality of the circumstances. There are no bright-line indicia of custody; therefore, stating that an individual is not free to leave is not alone enough to trigger *Miranda*. *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998) ("mere questioning by officers, without some indicated restraint, does not amount … to custody for *Miranda* purposes."). Moreover, "questioning in a 'coercive environment' alone is insufficient to trigger the need for *Miranda* warnings." *Wass v. Commonwealth*, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987). Additional factors such as the surrounding environment, how many officers were present, whether the officer drew their weapons, whether threatening language was used, all must be considered when evaluating custodial arrest. *Id.* at 33 (citation omitted).

The purpose of *Miranda* is to protect a suspect against self-incrimination in the face of " 'the inherently compelling pressures' of custodial interrogation … [pressuring] him to speak where he would otherwise not do so freely." *Harris v. Commonwealth*, 27 Va. App. 554, 563, 500 S.E.2d 257, 261 (1998) (citing *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). If the circumstances surrounding police questioning do not significantly restrain the suspect, then *Miranda* warnings are not required. *Id.* at 564 (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). In order to determine whether *Miranda* warnings should be given, the Court should consider factors such as, but not limited to, "(1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual." *Id.* at 565.

Indeed, even a combination of these factors may not rise to the level of custodial arrest. "Drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes." *United States v. Leshuk*, 65 F.3d 1105, 1109-10 (4th Cir. 1995). There must be various additional factors indicating a more intrusive level of restraint than mere questioning by police officers. *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998). For example, the presence of twelve police officers arriving by trucks and a helicopter, threats to kill the suspect's dogs if he could not control them, and parking at the driveway gate and surrounding the house

all rose to the level of restraint where the suspect was effectively in custody. *Wass*, 5 Va. App. at 34. Indeed, "the police officers, through a significant display of force and manpower, seized control of Wass's private residence in a manner suggestive of a military maneuver." *Id.*

In the present case, the officers on the scene did not physically restrain Mr. Kadison, nor did they act in a threatening manner. Mr. Kadison was not handcuffed until he was placed under arrest. He was not placed in the back of a police car, but was allowed to stand near his vehicle while the officers conversed. The officers did not draw their weapons at any point, nor did they raise their voices in an aggressive or hostile manner. Mr. Kadison's demeanor during the stop indicated that he was freely speaking to the officers; indeed he "asked a lot of questions about the checkpoint." Tr. at 40-41. Without additional factors indicating a significant restraint on Mr. Kadison's freedom, either through aggressive action or physical restraints or an indication that he was overwhelmed by such restraints, forcing him to speak against his will, this stop did not transform into a custodial arrest simply because Mr. Kadison was told that he could not leave the scene. Therefore, there was no need for Officer Bryk or any of the other officers on the scene to give *Miranda* warnings to Mr. Kadison, and the officers were free to ask him questions in order to investigate their suspicions regarding possible obstruction of justice concerning the operation of the checkpoint.

Accordingly, the Court holds that Mr. Kadison's statements are admissible at trial.