**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4420

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES O. POPE, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (3:05-cr-00305-HEH)

Argued:  November 30, 2006          Decided:  January 5, 2007

Before WIDENER and WILKINSON, Circuit Judges, and David A. FABER, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brian Jay Grossman, CROWGEY & GROSSMAN, Richmond, Virginia, for Appellant.  Stephen Wiley Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant James O. Pope, Jr., was convicted of possession of a firearm by a convicted felon, pursuant to 18 U.S.C. § 922(g)(1) (2000). He received an increased penalty under 18 U.S.C. § 924(e)(1) (2000) as an armed career criminal with three prior convictions for violent felonies or serious drug offenses. Defendant appeals the district court's denial of his motion to suppress evidence relating to his encounter with two Richmond sheriff's deputies on the night of his arrest. He also challenges the district court's determination of his status as an armed career criminal and its denial of a sentence reduction for acceptance of responsibility. He further appeals his conviction on the basis of ineffective assistance of counsel. We affirm the judgment of the district court.

I.

On December 9, 2004, defendant was arrested for carrying a concealed weapon without a permit at the Satellite Club in Richmond, Virginia ("the Club"). Two uniformed, off-duty deputy sheriffs of the Richmond City Sheriff's Office, Howard Jackson and Milton Byrd, were working as security officers at the Club that evening. The Club prohibits patrons from carrying firearms, and Deputies Jackson and Byrd were screening people coming into the Club that evening to enforce this rule. Defendant Pope, however,

entered the Club while the deputies were on break and thus was not screened.

Upon returning to duty at approximately 1:15 am, Deputy Byrd noticed what appeared to be the outline of a firearm beneath defendant's sweater. He conferred with Deputy Jackson, who agreed that defendant appeared to be concealing a gun. Deputy Byrd approached defendant and asked to speak to him outside. Defendant agreed. Once outside, Deputy Byrd asked defendant what was concealed beneath his sweater. Defendant responded that he had a gun and had forgotten to leave it in his car. Deputy Jackson then reached under defendant's sweater and removed a Ruger .40 caliber semi-automatic pistol, containing a magazine with eleven rounds of .40 caliber ammunition.

Defendant stated that his identification and concealed weapons permit were in his car. The deputies allowed him to go to his car, but defendant was unable to produce either identification or a weapons permit. He also told the deputies at various times that his name was Marvin Pope, Richard Pope, and James Pope. Upon defendant's failure to produce a weapons permit, the deputies attempted to arrest him, at which point defendant began to struggle and refused to be handcuffed. It required half a can of mace and the assistance of backup officers to subdue and arrest defendant Pope. The deputies subsequently learned Pope's true name, along with the fact that he was a multiple convicted felon.

After his indictment, defendant filed a motion to suppress the firearm and his statements made to the deputies, on the grounds that the deputies' actions constituted a seizure unsupported by reasonable, articulable suspicion of criminal conduct and that the deputies improperly interrogated him without first providing Miranda warnings. The district court denied the motion to suppress. The court found that defendant willingly chose to step outside at the deputies' request; his encounter with them was consensual; and in response to questions he volunteered that he had a concealed firearm. The court also stated that both deputies observed defendant carrying what they knew to be a firearm and that this reasonable belief created sufficient articulable suspicion to warrant an investigative detention. The court further found that the deputies were justified in securing the firearm until they could determine whether the defendant possessed it lawfully.

The defendant was tried and convicted at a bench trial on January 3, 2006. At trial, the parties stipulated to the evidence, including the testimony of the two deputies from the suppression hearing. The parties also stipulated that, at the time of the offense, defendant was a convicted felon and that the recovered firearm was transported in interstate commerce.

At sentencing, the district court found that, due to defendant's 1989 conviction for malicious wounding and two 2001 convictions for distribution of cocaine base, he was an armed

career criminal and thus subject to an increased penalty pursuant to 18 U.S.C. § 924(e)(1). The court also denied defendant a reduction in offense level for acceptance of responsibility. The court sentenced defendant to 252 months of imprisonment. Defendant appeals.

## II.

Defendant contends that the district court erred in denying his motion to suppress evidence obtained during his encounter with the deputies. Defendant argues that the request that he step outside constituted a seizure unsupported by reasonable, articulable suspicion that he was engaged in criminal conduct.

The district court was correct to find that this encounter did not constitute a seizure. Officers may approach, address, and question citizens without implicating the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 434 (1991); United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002). A seizure occurs only when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Immigration & Naturalization Servs. v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Mendenhall, 446 U.S. 544, 554, (1980) (plurality opinion)). See Michigan v. Chesternut, 486 U.S. 567, 573 (1988); United States v. Gordon, 895 F.2d 932, 937 (4th Cir. 1990).

In this case, Deputy Byrd asked to speak to the defendant outside the Club, and defendant voluntarily complied. The deputies then asked him what was concealed beneath his sweater, and defendant replied that it was a gun. The voluntary, noncoercive nature of this interaction does not create a seizure under Mendenhall's totality of the circumstances standard. There was no use of force or show of authority to which the defendant submitted. See California v. Hodari D., 499 U.S. 621, 626-28 (1991); United States v. Brown, 401 F.3d 588, 594 (4th Cir. 2005). The deputies neither said nor did anything to suggest that compliance was required or that defendant was not free to end the exchange. The deputies simply made requests, to which defendant voluntarily responded. Such an encounter does not constitute a seizure. See Weaver, 282 F.3d at 312-13 (no seizure where defendant voluntarily complied with officers' requests); Gordon, 895 F.2d at 938 (same).

In any case, even if the encounter had not been consensual -- if defendant had not willingly complied with the requests -- the deputies would have had a sufficient basis to seize the defendant. Under Terry v. Ohio and its progeny, a brief seizure in the form of an investigatory detention is lawful when based on a reasonable, articulable suspicion that the subject is engaged in criminal activity. See United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Sokolow, 490 U.S. 1, 7 (1989); Adams v. Williams, 407 U.S. 143, 145-46 (1972); Terry v. Ohio, 392 U.S. 1, 21 (1968).

-6-

The "level of suspicion required for a <u>Terry</u> stop is . . . less demanding than that for probable cause," <u>Sokolow</u>, 490 U.S. at 7, and requires consideration of the "totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing," <u>Arvizu</u>, 534 U.S. at 273 (internal quotation marks omitted). An officer's personal observations are a primary basis for establishing reasonable suspicion. <u>See, e.g.</u>, <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-25 (2000); <u>United States v. Sharpe</u>, 470 U.S. 675, 682 n.3 (1985); <u>Terry</u>, 392 U.S. at 28; <u>United States v. Smith</u>, 396 F.3d 579, 584-85 (4th Cir. 2005).

In this case, the personal observations of the deputies would certainly have created a particularized and objective basis for an investigative detention. Both Deputy Byrd and Deputy Jackson personally observed what they knew to be the outline of a gun concealed beneath defendant's clothing. <u>See</u> <u>Arvizu</u>, 534 U.S. at 273 (officers may "draw on their own experience and specialized training to make inferences" about what they observe). Not only does the Club prohibit firearms inside, but possession of a concealed weapon is a criminal offense in Virginia. <u>See</u> Va. Code Ann. § 18.2-308 (2004).[1] The deputies were thus justified in

---

[1]"If any person carries about his person, hidden from common observation, (I) any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material . . . he shall be guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-308 (2004).

-7-

investigating defendant's apparent possession of a concealed weapon, and they would have had a reasonable basis for effecting an investigatory detention in order to do so. See United States v. Mayo, 361 F.3d 802, 808 (4th Cir. 2004) (reasonable suspicion that defendant carried concealed weapon sufficient to justify Terry stop and pat-down).

Defendant's contention that the deputies improperly seized his firearm is similarly without merit. Defendant told the deputies that he was carrying a firearm, making a pat-down unnecessary.[2] Upon receiving confirmation that defendant was armed, the deputies were justified in seizing the firearm, both for their own protection and on the basis of reasonable suspicion that the concealed weapon was possessed illegally. See Adams, 407 U.S. at 148; Mayo, 361 F.3d at 808. Indeed, at that point the deputies had probable cause to arrest defendant. See Mayo, 361 F.3d at 808 (officers "had probable cause to arrest [defendant]" when frisk revealed concealed weapon).

Defendant also argues that the deputies extracted incriminating statements from him without first providing Miranda warnings. This contention too is unfounded. The safeguards of Miranda apply to custodial interrogations, i.e., "where there has

---

[2]Even if a pat-down had occurred, "a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." Ybarra v. Illinois, 444 U.S. 85, 93 (1979); Mayo, 361 F.3d at 808.

been such a restriction on a person's freedom as to render him 'in custody.'" United States v. Sullivan, 138 F.3d 126, 130 (4th Cir. 1998) (citation omitted). An individual is "'in custody' for purposes of Miranda either if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." Id. It was not until defendant failed to produce a concealed weapons permit that he was placed in custody, and it was at this point that Miranda warnings became appropriate.[3]

Thus the officers' actions on the night of defendant's arrest were appropriate and reasonable. Defendant voluntarily stepped outside and told the deputies that he was carrying a gun. The deputies properly removed the gun from defendant's possession pending his presentation of a concealed weapons permit. And when defendant failed to produce such a permit, the deputies took him into custody. The district court was correct to rule that this sequence of events was proper and thus to deny defendant's motion to suppress.

---

[3]In all events, defendant's Miranda argument is unavailing because the government conceded before trial that it did not intend to use any statements made prior to defendant's arrest. To the extent that such statements were ultimately referenced at trial, it was through the suppression hearing testimony of Deputies Jackson and Byrd, upon which the court was allowed to rely by defendant's stipulation.

III.

Defendant also argues that the district court erred in determining that defendant was an armed career criminal for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). In reviewing the district court's application of the Armed Career Criminal Act, "we review its legal determinations de novo and its factual findings for clear error." United States v. Wardrick, 350 F.3d 446, 451 (4th Cir. 2003).

18 U.S.C. § 924(e)(1) provides enhanced penalties when a defendant convicted of possession of a firearm by a prohibited person under 18 U.S.C. § 922(g) has three prior convictions for violent felonies or serious drug crimes. The statute requires that the three prior offenses have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Defendant was convicted in 1989 of malicious wounding and twice in 2001 of distribution of cocaine base. Defendant does not challenge the validity of these convictions. Instead, he argues that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), the fact that the convictions arose from offenses committed on three separate occasions should have required proof beyond a reasonable doubt.[4]

Apprendi required submission to a jury and proof beyond a reasonable doubt of facts that increased a defendant's penalty,

---

[4]In this case, because defendant waived a jury trial, this question would still have been decided by the court. The only difference is the burden of proof that would have applied.

-10-

with the exception of the fact of a defendant's prior convictions. 530 U.S. at 490. See also Blakely v. Washington, 542 U.S. 296, 301 (2004); United States v. Booker, 543 U.S. 220, 244 (2005). In this case, the district court conducted an independent review of the court documents pertaining to the 2001 convictions. Following the Supreme Court in Shepard v. United States, 544 U.S. 13, 20-21 (2005), this court has held that the district court may consider "a variety of conclusive court documents when determining the nature of a prior conviction." United States v. Thompson, 421 F.3d 278, 281 (4th Cir. 2005). These include "the charging document, the terms of a plea agreement, the plea colloquy, the statutory definition, or any explicit finding of the trial judge to which the defendant assented." United States v. Collins, 412 F.3d 515, 521 (4th Cir. 2005); see Shepard, 544 U.S. at 20-21. Here, the district court concluded that defendant was a career criminal based upon the indictments and sentencing orders relating to the prior convictions. Those records establish that the two 2001 offenses occurred over different time frames and involved drug distributions to different individuals. The indictments were distinct, and each offense was punished by a separate sentence. These facts plainly establish the offenses as separate occasions for the purposes of 18 U.S.C. § 924(e)(1). The court thus did not exceed the scope of permissible documentation. Rather, it properly found that defendant was an armed career criminal.

-11-

Defendant also contends that the district court erred in declining to reduce his sentence for acceptance of responsibility. "A defendant's credibility and demeanor play a crucial role in evaluating whether he is genuinely contrite and has accepted responsibility and the sentencing judge is in a unique position to evaluate these factors."  United States v. Harris, 882 F.2d 902, 905 (4th Cir. 1989).  Thus the court "review[s] a district court's decision to grant or deny an adjustment for acceptance of responsibility for clear error."  United States v. Ruhe, 191 F.3d 376, 388 (4th Cir. 1999).

Section 3E1.1 of the now-advisory Sentencing Guidelines authorizes a reduction in a defendant's offense level for a clear demonstration of acceptance of responsibility.  See U.S. Sentencing Guidelines Manual § 3E1.1 (2006).  The Guidelines further note that such a reduction will rarely be appropriate where, as here, a defendant proceeds to trial.  See id. § 3E1.1 cmt. n.2.  Defendant, however, claims that he should be treated as though he had pled guilty, because he expressed a willingness to plead guilty and proceeded to trial only to preserve his right to appeal the denial of his motion to suppress.

This argument is not well taken.  The facts here support the district court's denial of the reduction in any case.  Besides the dubious assertion that he would have been willing to plead guilty,

defendant can offer no evidence of acceptance of responsibility. Instead, as the district court noted, "there is simply no evidence of any manifestation of remorse or contrition." United States v. Pope, No. 3:05CR305-HEH, slip op. at 4 (E.D. Va. Apr. 10, 2006). When confronted by the deputies about his concealed firearm, defendant lied about his identity and his possession of a permit. When the deputies moved to arrest him, defendant resisted so violently that it required backup officers and half a can of mace to subdue him.  Such conduct in no way supports a finding of acceptance of responsibility, and the district court did not err in so concluding.[5]

For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED

---

[5]Defendant also contends that defense counsel's recommendation to go to trial on stipulated facts constituted ineffective assistance of counsel.  Such a claim may not be raised on direct appeal unless the record conclusively shows counsel's performance fell below an objective level of performance.  United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006).  The record here certainly does not contain such a showing.