IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-30115

Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ELWIN DEMETRIUS BOONE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

(October 5, 1995)

Before HIGGINBOTHAM, DUHÉ, and EMILIO GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Elwin Boone pled guilty to possessing marijuana with intent to distribute and to carrying a firearm while committing a drug-related offense. Boone reserved his right to appeal the district judge's denial of his motion to suppress the marijuana and the gun. In response to Boone's exercise of his right, we affirm.

The facts concern an encounter between law enforcement officials and Boone, and Boone's challenge rests on the Fourth Amendment. In such a case, our role is well settled. We accept the district court's findings of fact unless they are clearly erroneous or influenced by an incorrect view of the law. United States v. Garcia, 849 F.2d 917, 917 n.1 (5th Cir. 1988). We view

the evidence in the light most favorable to the party prevailing below, id., and we keep these principles most firmly in mind when reviewing "credibility determinations[,] because the trier of fact has seen and judged the witnesses." United States v. Breeland, II, 53 F.3d 100, 103 (5th Cir. 1995) (internal quotation omitted). We review de novo the district court's ultimate conclusions on Fourth Amendment issues. United States v. Diez, 977 F.2d 163, 164 (5th Cir. 1992). But see United States v. Valdiosera-Godinez, 932 F.2d 1093, 1098 n.1 (5th Cir. 1991) (holding that appellate courts should apply the clear error standard to a trial court's determination of whether a seizure occurred), cert. denied, 113 S. Ct. 2369 (1993).[1]

We pause to note that these preliminary statements are more than boilerplate. We do not sit to resolve conflicts in descriptions of events. We do not find compelling arguments based on "facts" inconsistent with those found by a district judge on the basis of credible oral testimony, even when another credible witness presents contradictory evidence.

Boone's primary argument is that his encounter with Customs Agent Moorehouse constituted an illegal seizure because law enforcement officials did not possess reasonable suspicion of wrongdoing. See Terry v. Ohio, 392 U.S. 1 (1968). The district court held that the encounter did not constitute a seizure and

---

[1] Because our decision would be the same regardless of the standard of review, we do not examine this apparent intra-circuit conflict.

therefore that no reasonable suspicion was needed. We agree with the court below.

Boone's first contention is that the district court committed clear error by crediting the law enforcement officers' version of the events because of alleged contradictions in the officers' testimony. We disagree. Those contradictions that actually existed dealt with details irrelevant to the issue of whether a seizure occurred. One concerned whether agents communicated orally or with hand motions. Another focused on the fact that an officer outside a bus could not hear conversation inside, but an officer inside the bus could hear conversation outside. A third consists of the fact that an officer in a police report wrote that agents boarding the bus identified themselves as law enforcement, but on cross-examination he admitted that he was presuming that the agents did so from his knowledge of standard procedure. None of these differences in the description of events bears a connection to the facts relevant to a Terry analysis, and they are not sufficiently egregious or numerous to allow an appellate court to overrule a district court's findings on credibility.

Boone renews his Terry stop argument on the grounds that the events as found by the district court compel us to hold that a seizure occurred. The facts relevant to this analysis are as follows. Detective Johnson and Agent Chirinos boarded the bus, identified themselves as a law enforcement officials, informed the passengers that they were looking for contraband and illegal immigrants, and asked everyone to leave the bus. Several law

3

enforcement officials were stationed outside, all carrying visible guns in hip holsters and wearing some insignia of authority. In particular, Agent Moorehouse stationed himself near the terminal door to watch the passengers file in. Boone passed Moorehouse in line. Moorehouse then caught up with Boone, tapped him on the shoulder, and asked in a businesslike and courteous tone of voice to speak with him. Boone agreed.

Boone and Moorehouse then stepped four feet away from the line of passengers filing into the terminal. Several people moved in and out of the terminal around where the two men were standing. Continuing to speak in a calm tone of voice, Moorehouse asked Boone for his name and some identification. Boone responded by handing Moorehouse his bus ticket. Moorehouse examined the ticket, which was issued to "D. Jackson," and asked what the "D" stood for. Boone replied that D. Jackson was an alias and that his real name was Elwin Boone. Moorehouse asked Boone where he was coming from, where he was going, and how long he had spent in his point of origin. Boone replied Houston, Mobile, and two days. Agent Moorehouse asked Boone for whom he worked, and Boone responded that he was unemployed and had been looking for work in Houston. Agent Moorehouse asked Boone if he had checked any luggage, and Boone replied that he had only the carry bag. Moorehouse then requested for Boone's consent to search the bag. The encounter lasted around five minutes.

We find this a close case, but ultimately agree with the district court that no seizure occurred. We focus initially on the

moment at which Moorehouse tapped Boone on the shoulder and asked if he would answer a few questions. Had this been the first interaction between Boone and law enforcement, we would have little difficulty labeling the encounter innocuous. But Boone was previously diverted from his intended course of action when the officers, showing significant signs of authority and stating their business as law enforcement, ordered him off the bus.[2] But see United States v. Valdiosera-Godinez, 932 F.2d 1093, 1099 (5th Cir. 1991) (holding that law enforcement officials' request via hand signals that suspects join them outside a rental unit did not make the encounter a seizure), cert. denied, 113 S. Ct. 2369 (1993). Stopping Boone after the previous statement that the officers were looking for contraband and illegal immigrants implied that Boone himself was suspect of illegal activity. See United States v. Glass, 741 F.2d 83, 85 (5th Cir. 1984) (holding that the defendants were seized when officers informed them that they were suspected of illegal activity). Nevertheless, the order to leave the bus was a general one, the rest of the setting public, and Moorehouse's request communicated in a noncoercive manner. The implication that the officers suspected Boone of illegal activity is only that. From Boone's point of view, Moorehouse might have been choosing passengers randomly as the they alighted from the bus. A reasonable person would have considered herself free to refuse Moorehouse's request. See Florida v. Bostick, 501 U.S. 429, 436

---

[2] Boone, surprisingly, does not focus on this fact in his brief.

(1991) (holding that no seizure occurs when "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter"); INS v. Delgado, 466 U.S. 210, 220 (1984) (holding that an INS official's brief questioning of a factory worker, after a brief tap on the shoulder to gain her attention, did not constitute a seizure).[3]

We now consider the rest of the encounter. At this point, Moorehouse asked Boone a series of questions, many of these while holding Boone's ticket. The scope and number of these questions exceeded a minimal request for name, identification, and business, but not by much. The encounter lasted longer than a minimal street interaction, but not by much. Moorehouse was holding Boone's ticket during most of these questions, but Boone had offered the ticket. Moreover, many of Moorehouse's inquiries concerned information from the ticket, suggesting to a reasonable person that Moorehouse was not holding the ticket to assure she remained nearby. See United States v. Berry, 670 F.2d 583, 597 (5th Cir. 1982) (holding a suspect's ticket in view for a minimal amount of time does not elevate the encounter into a seizure). There were several police officers around, but the encounter occurred in a

---

[3] We disagree with Boone that United States v. Gonzales, 842 F.2d 748, 752 (5th Cir. 1988), created a per se rule that any physical contact whatsoever between a law enforcement officer and a citizen constitutes a seizure. On the contrary, Gonzales held that physical contact between the officer and the citizen "has been consistently regarded by this Court as persuasive evidence that a fourth amendment seizure has occurred." 842 F.2d at 752. The persuasive force of the contact is proportional to its coerciveness and intrusiveness. It is difficult to imagine a form of physical contact less coercive or intrusive than a tap on the shoulder to get attention.

public place with many people coming and going.  See United States v. Berd, 634 F.2d 979, 985 (5th Cir. 1981) (airport).  The officers asked Boone to step four feet away to allow passengers to continue to flow into the terminal, but no one restricted Boone's freedom of movement on the tarmac, and the encounter might have felt a good deal more coercive and urgent had several impatient passengers remained at Boone's back.  See Berry, 670 F.2d at 597 (stating that "blocking an individual's path or otherwise intercepting him to prevent his progress in any way is a consideration of great, and probably decisive, significance").  Again, we find this case to be close.  But remembering that Boone was free to refuse the initial questioning altogether, we agree with the district court that a reasonable person would have considered herself free to ask for the ticket's return and to terminate the encounter.

Given our characterization of the encounters between Boone and law enforcement officials as consensual, and our agreement with the district court that Boone was free to terminate the encounter at any time, we also affirm the district court's ruling that Boone voluntarily consented to the search of his bag.

AFFIRMED.