[No. S123133. June 29, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE EDWARD BRENDLIN, Defendant and Appellant.

## COUNSEL

Elizabeth Campbell, under appointment by the Supreme Court, and James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean, Janet E. Neeley, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—When a peace officer directs the driver of a vehicle to pull over for a traffic stop but, in effecting the stop, gives no indication that the passenger of the vehicle is the focus of the officer's investigation or show of authority, is the passenger subjected to a "seizure" within the meaning of the Fourth Amendment? This is a question that has divided courts inside and outside this state. We find that the passenger, whose progress is momentarily stopped as a practical matter, is not seized as a constitutional matter in the absence of additional circumstances that would indicate to a reasonable person that he or she was the subject of the peace officer's investigation or show of authority. We therefore reverse the judgment of the Court of Appeal, which (1) held that the passenger was automatically seized as a result of the traffic stop; (2) determined that the traffic stop was unlawful; and (3) suppressed the evidence of methamphetamine manufacturing found in the car and on defendant's person as the fruit of the illegal seizure.

### BACKGROUND

Around 1:40 a.m. on November 27, 2001, Sutter County Sheriff's Deputy Robert Charles Brokenbrough effected a traffic stop of a brown 1993 Buick Regal with expired registration tabs on Franklin Avenue in Yuba City. Prior to the stop, Deputy Brokenbrough confirmed through dispatch that the car's registration had expired two months earlier but that an application was "in process" to renew the registration. Although Deputy Brokenbrough observed that a temporary operating permit with the number "11" (indicating an expiration date at the end of November) had been taped to the rear window, he could not determine from his vantage point whether the permit matched the vehicle and decided to stop the Buick to investigate further.

Deputy Brokenbrough approached the driver's side of the Buick and asked the driver, Karen Simeroth, for her driver's license. He also asked defendant, the passenger, to identify himself, since he recognized defendant as one of the Brendlin brothers, Scott or Bruce, and recalled that one of them had absconded from parole supervision. During the inquiry, Deputy Brokenbrough observed receptacles in the car containing substances used in the production of methamphetamine. In response to the deputy's inquiry, defendant falsely identified himself as Bruce Brown. The deputy returned to his patrol vehicle and verified that Bruce Brendlin was a parolee at large and had an outstanding no-bail warrant for his arrest. During this period, defendant opened and then closed the passenger door of the Buick.

After requesting backup, Deputy Brokenbrough pointed his weapon at defendant, ordered him out of the car, and placed him under arrest for the

parole violation. The entire episode, from the time Deputy Brokenbrough asked Simeroth for her driver's license to his discovery that defendant had an outstanding warrant, lasted a couple of minutes.

Police found an orange syringe cap on defendant's person during a search incident to arrest. They found two hypodermic needles (one of which was missing a syringe cap), two baggies containing a total of 12.43 grams of marijuana, and a baggie containing 0.46 grams of methamphetamine on Simeroth's person during a patsearch and a subsequent search incident to her arrest. Materials used in manufacturing methamphetamine were found in the backseat of the Buick.

After a hearing on defendant's motion to suppress, the superior court held that defendant had not been seized within the meaning of the Fourth Amendment until Deputy Brokenbrough ordered him out of the car at gunpoint and placed him under arrest: "He was free to leave. And if he had opened the door and got out and taken a hike, then this officer would have had to decide whether he had something less than probable cause to detain him, and then he would have been detained. But he wasn't detained because he never went anywhere; but he had a right to if he wanted to." The court determined next that even if defendant had been seized at an earlier point, the traffic stop was lawful; even if the stop had been unlawful, defendant, as a passenger, lacked standing[1] to suppress the items seized from the Buick.

Following the denial of his motion to suppress, defendant pleaded guilty to manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)) and admitted a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)). He was sentenced to four years in prison.

The Court of Appeal reversed in a published opinion. It held that a traffic stop necessarily results in a detention (and, hence, a seizure (*People v. Glaser* (1995) 11 Cal.4th 354, 363 [45 Cal.Rptr.2d 425, 902 P.2d 729])) of both the driver and the passengers, rejecting the analysis and holdings of *People v. Castellon* (1999) 76 Cal.App.4th 1369, 1373–1374 [91 Cal.Rptr.2d 204]; *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1367–1369 [85 Cal.Rptr.2d 788]; and *People v. Fisher* (1995) 38 Cal.App.4th 338, 343–344 [45

---

[1] The United States Supreme Court has largely abandoned use of the word "standing" in its Fourth Amendment analysis. (See *Minnesota v. Carter* (1998) 525 U.S. 83, 87–88 [142 L.Ed.2d 373, 119 S.Ct. 469].) "It did so without altering the nature of the inquiry: whether the defendant, rather than someone else, had a reasonable expectation of privacy in the place searched or the items seized." (*People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3 [96 Cal.Rptr.2d 682, 1 P.3d 3].) We have embraced the high court's formulation and no longer analyze this substantive issue as one of standing. (*Ibid.*; *People v. Valdez* (2004) 32 Cal.4th 73, 121, fn. 24 [8 Cal.Rptr.3d 271, 82 P.3d 296].)

Cal.Rptr.2d 57]. The Court of Appeal further found that the stop was unlawful in that Deputy Brokenbrough, who knew that the vehicle's application to renew its registration was in process and who had seen the temporary permit in the rear window, had "at most a hunch" that "the temporary operating permit displayed in the window might not belong to the car and, thus, it was being unlawfully operated as an unregistered vehicle." The court ruled that the evidence seized from defendant as well as from the Buick should have been suppressed.

We granted review, limited to (1) whether defendant, as a passenger in a vehicle subjected to a traffic stop, was seized within the meaning of the Fourth Amendment; and (2) whether reasonable suspicion exists that a car is unregistered when it exhibits an expired registration tab on its license plate but displays what appears to be a valid temporary operating permit in its rear window.

## DISCUSSION

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. (*People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].) We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. (*Ibid.*)" (*People v. Ramos* (2004) 34 Cal.4th 494, 505 [21 Cal.Rptr.3d 575, 101 P.3d 478].)[2] In evaluating whether the fruits of a search or seizure should have been suppressed, we consider only the Fourth Amendment's prohibition on

---

[2] State courts and the lower federal courts are divided as to the appropriate standard of review of a finding that a seizure has or has not occurred. Many courts hold that this is a question of law or a mixed question of law and fact subject to de novo review. (*U.S. v. Smith* (1st Cir. 2005) 423 F.3d 25, 31, fn. 4; *id.* at p. 36 & fn. 9 (dis. opn. of Lynch, J.) [citing cases from the Second, Third, Sixth, Eighth, Tenth, and District of Columbia Circuits]; *LaDuke v. Nelson* (9th Cir. 1985) 762 F.2d 1318, 1327; accord, *State v. Kachanian* (Ct.App. 1995) 78 Haw. 475 [896 P.2d 931, 938]; *State v. Harris* (Minn. 1999) 590 N.W.2d 90, 98; *State v. Jason L.* (2000) 2000 NMSC 18 [129 N.M. 119, 2 P.3d 856, 863]; *State v. Carter* (Utah Ct.App. 1991) 812 P.2d 460, 465, fn. 3; *McGee v. Com.* (1997) 25 Va.App. 193 [487 S.E.2d 259, 261]; *State v. Thorn* (1996) 129 Wn.2d 347 [917 P.2d 108, 111]; *State v. Garcia* (1995) 195 Wis.2d 68 [535 N.W.2d 124, 126].) Other courts hold that this is a question of fact subject to review for substantial evidence or clear error. (*U.S. v. Mask* (5th Cir. 2003) 330 F.3d 330, 335; *U.S. v. Wilson* (4th Cir. 1991) 953 F.2d 116, 121; *U.S. v. Teslim* (7th Cir. 1989) 869 F.2d 316, 321; accord, *Lindsay v. State* (Alaska Ct.App. 1985) 698 P.2d 659, 661; *State v. Hill* (1996) 237 Conn. 81 [675 A.2d 866, 871]; *State v. Raker* (Fla.Dist.Ct.App. 2004) 883 So.2d 887, 888–889.) Because the parties here do not address the issue—and because our decision would be the same under either standard—we find it unnecessary to resolve the conflict. (See *U.S. v. Boone* (5th Cir. 1995) 67 F.3d 76, 77, fn. 1.)

unreasonable searches and seizures. (*People v. Carter* (2005) 36 Cal.4th 1114, 1141 [32 Cal.Rptr.3d 759, 117 P.3d 476].) "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (*Rakas v. Illinois* (1978) 439 U.S. 128, 131, fn. 1 [58 L.Ed.2d 387, 99 S.Ct. 421].)

Prior to the vehicle stop here, Deputy Brokenbrough noticed that the registration tabs on the Buick's license plate were expired. However, he also observed a current temporary operating permit in the car's rear window and had received radio confirmation that an application for renewal of the vehicle's registration was indeed in process. Conceding that "[a] vehicle with an application for renewal of expired registration would be expected to have a temporary operating permit," the Attorney General no longer argues that Deputy Brokenbrough had articulable suspicion the Buick's registration was invalid. The Attorney General argues instead that defendant has no entitlement to suppression of the evidence uncovered during the traffic stop because he, as a passenger, was not seized within the meaning of the Fourth Amendment until Deputy Brokenbrough ordered him out of the car at gunpoint and arrested him under the outstanding no-bail warrant, which provided lawful cause for the seizure. Defendant, on the other hand, argues that he was seized at the moment the driver submitted to the show of official authority and stopped the car, which preceded the deputy's discovery of the outstanding warrant.[3]

█ It is well settled that the driver of a vehicle that is the subject of a traffic stop is seized within the meaning of the Fourth Amendment. (*Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L.Ed.2d 89, 116 S.Ct. 1769].) Neither this court nor the United States Supreme Court, however, has yet decided whether the driver's submission to the show of authority results in a seizure of the *passenger*. A majority of courts, including several federal circuit courts and some state courts, have embraced a per se rule that the passenger is seized at the moment the driver submits to the official show of authority. (E.g., *U.S. v. Twilley* (9th Cir. 2000) 222 F.3d 1092, 1095; *U.S. v. Eylicio-Montoya* (10th Cir. 1995) 70 F.3d 1158, 1163–1164; *U.S. v. Kimball* (1st Cir. 1994) 25 F.3d 1, 5; *U.S. v. Roberson* (5th Cir. 1993) 6 F.3d 1088, 1091; *U.S. v. Powell* (7th Cir. 1991) 929 F.2d 1190, 1195; *State v. Hernandez* (Fla.Dist.Ct.App. 1998) 718 So.2d 833, 836; *People v. Bunch* (2003) 207 Ill.2d 7 [277 Ill.Dec. 658, 796 N.E.2d 1024, 1029]; *State v. Eis* (Iowa 1984) 348 N.W.2d 224, 226; *State v. Carter* (1994) 69 Ohio St.3d 57 [1994 Ohio 343,

---

[3] Defendant concedes that, as a mere passenger, his Fourth Amendment rights were not violated by the search of his codefendant's vehicle. (*Rakas v. Illinois, supra,* 439 U.S. at pp. 133, 148; accord, *People v. Valdez, supra,* 32 Cal.4th at p. 122.) He claims instead that suppression of the incriminating evidence found in the car is required because it was the fruit of an unlawful seizure of his person.

630 N.E.2d 355, 360]; *Josey v. State* (Tex.Crim.App. 1998) 981 S.W.2d 831, 837–838; see also 6 La Fave, Search and Seizure (4th ed. 2004) § 11.3(e), pp. 194–195, fn. 277 [citing cases].) Other courts, reasoning that the passenger in a vehicle subject to a traffic investigation is stopped for practical purposes but not by virtue of the show of official authority, hold that the passenger is not seized for Fourth Amendment purposes. (E.g., *People v. Jackson* (Colo. 2002) 39 P.3d 1174, 1184–1186; *State v. Mendez* (1999) 137 Wn.2d 208 [970 P.2d 722, 729]; see also 6 La Fave, Search and Seizure, *supra*, § 11.3(e), p. 193, fn. 272 [citing cases].)

This division of authority is reflected in the courts of our own state. Some courts agree with defendant that the interference with the passenger's freedom of movement occasioned by the traffic stop constitutes a seizure. (*People v. Bell* (1996) 43 Cal.App.4th 754, 765 [51 Cal.Rptr.2d 115]; *People v. Hunt* (1990) 225 Cal.App.3d 498, 505 [275 Cal.Rptr. 367]; *People v. Grant* (1990) 217 Cal.App.3d 1451, 1457–1458 [266 Cal.Rptr. 587].) Other courts agree with the Attorney General that although the driver must submit to the officer's instructions, the passenger is free to disregard the police and go about his or her business, and that the incidental restriction of the passenger's freedom of movement is therefore not a seizure. (*People v. Castellon, supra,* 76 Cal.App.4th at p. 1374; *People v. Cartwright, supra,* 72 Cal.App.4th at p. 1369 (*Cartwright*); *People v. Fisher, supra,* 38 Cal.App.4th at p. 344; *People v. Gonzalez* (1992) 7 Cal.App.4th 381, 384 [8 Cal.Rptr.2d 640].)

■ At the heart of this debate lies the definition of a seizure in the Fourth Amendment's prohibition on "unreasonable searches and seizures." Justice Stewart's opinion in *United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 100 S.Ct. 1870], which has been adopted by the court in subsequent cases (e.g., *Michigan v. Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 108 S.Ct. 1975]), states that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Fn. omitted.) The high court subsequently made clear that this test "states a *necessary,* but not a *sufficient,* condition for seizure." (*California v. Hodari D.* (1991) 499 U.S. 621, 628 [113 L.Ed.2d 690, 111 S.Ct. 1547] (*Hodari D.*).) That is, there must also be an actual taking into custody, whether by the application of physical force or by submission to the assertion of authority. (*Id.* at p. 626.) The court has also cautioned against an undue focus on the fact that government action caused some restriction on an individual's freedom of movement: " 'a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . , nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement . . . , but only when there is a governmental termination of freedom of movement *through means*

*intentionally applied.'* " (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 844 [140 L.Ed.2d 1043, 118 S.Ct. 1708], quoting *Brower v. County of Inyo* (1989) 489 U.S. 593, 596–597 [103 L.Ed.2d 628, 109 S.Ct. 1378].) Finally, the court has reminded us that where the individual may not feel free to leave for reasons *independent* of the police conduct—such as a passenger on a bus that is scheduled to depart shortly—the proper inquiry is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " (*Florida v. Bostick* (1991) 501 U.S. 429, 437 [115 L.Ed.2d 389, 111 S.Ct. 2382]; accord, *People v. Celis* (2004) 33 Cal.4th 667, 673 [16 Cal.Rptr.3d 85, 93 P.3d 1027].)

It is passing strange, then, that defendant focuses so little attention on the definition of a seizure. Defendant (like the Court of Appeal below and the other cases embracing the majority view) instead advances an argument that rests on two other foundations: (1) dicta from United States Supreme Court decisions; and (2) the fact that a traffic stop curtails the freedom of movement of the passenger as well as the driver.

Although defendant concedes that the high court has not decided whether a passenger is necessarily seized by virtue of a traffic stop, he asserts that dicta from the high court has "strongly hinted" in that direction. In *Delaware v. Prouse* (1979) 440 U.S. 648, 653 [59 L.Ed.2d 660, 99 S.Ct. 1391], for example, the court observed that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth] Amendment[], even though the purpose of the stop is limited and the resulting detention quite brief." (See also *Berkemer v. McCarty* (1984) 468 U.S. 420, 436–437 [82 L.Ed.2d 317, 104 S.Ct. 3138], quoting *Prouse*.) In *Colorado v. Bannister* (1980) 449 U.S. 1, 4, footnote 3 [66 L.Ed.2d 1, 101 S.Ct. 42], the court reiterated that "[t]here can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment," citing *Prouse*. There is no debate here, though, whether a traffic stop results in a seizure. The issue, rather, is *who* (or what) has been seized. Inasmuch as *Bannister* and *Berkemer* involved the driver of the vehicle (*Bannister, supra*, 449 U.S. at p. 4; *Berkemer, supra*, 468 U.S. at p. 423) and *Prouse*, according to the opinion of the state supreme court, involved the owner and "operator" of the vehicle (*Prouse, supra*, 440 U.S. at p. 650, fn. 1), none of these cases is particularly illuminating on the status of a mere passenger.

Defendant, like the courts embracing the majority view, also relies on the observation in *Berkemer v. McCarty, supra*, 468 U.S. at page 436, that "a traffic stop significantly curtails the 'freedom of action' of the driver and the

passengers, if any, of the detained vehicle." It is important to recognize, however, that *Berkemer*'s observation was made in the context of whether a motorist detained pursuant to a traffic stop was in custody for purposes of the *Fifth* Amendment. (468 U.S. at p. 435.) Whether a person is in custody for purposes of the Fifth Amendment is an inquiry distinct from whether a person has been seized within the meaning of the Fourth Amendment. (*U.S. v. Sullivan* (4th Cir. 1998) 138 F.3d 126, 131 ["The 'custody' that implicates the *Miranda* rule is conceptually distinct from a seizure implicating the Fourth Amendment"]; *U.S. v. Smith* (7th Cir. 1993) 3 F.3d 1088, 1097 [the determination of custody under the Fifth Amendment requires "a completely different analysis" from that under the Fourth Amendment].) Indeed, as the high court has emphasized, " 'a governmentally caused termination of an individual's freedom of movement' " does not necessarily establish that a seizure under the Fourth Amendment has occurred. (*County of Sacramento v. Lewis, supra,* 523 U.S. at p. 844.) A police detention of an orderly pushing a wheelchair-bound individual or a detention of a parent pushing a child in a stroller may well incidentally curtail the freedom of action of the passengers who are dependent on those adults. The detention of the orderly or parent will also, to use the dissent's phrasing, "interrupt [the] journey" (dis. opn., *post,* at p. 1124) of the wheelchair or the stroller. But it is absurd to say that either passenger has thereby been seized within the meaning of the Fourth Amendment.

The cases embracing the majority view also assert that "[n]o principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped they are equally seized; their freedom of movement is equally affected." (*State v. Eis, supra,* 348 N.W.2d at p. 226; see also *People v. Bell, supra,* 43 Cal.App.4th at p. 763.) In reality, though, the passenger is not subject to the same restraints as the driver. The driver is obliged to remain at the scene until the completion of the officer's investigation. "[T]he passenger is stopped too, but only coincidentally." (*People v. Jackson, supra,* 39 P.3d at p. 1185.) Absent further direction from the officer effecting the stop (see *Maryland v. Wilson* (1997) 519 U.S. 408, 410 [137 L.Ed.2d 41, 117 S.Ct. 882]) or some indication that the passenger is the subject of the officer's investigation or show of authority, the passenger is free to ignore the police presence and go about his or her business. Alternatively, the passenger may choose to wait until the investigation of the driver is completed. In either case, "it is this element of choice that distinguishes the passenger's circumstance from the driver's, for the driver has been seized and is therefore not free to go." (*Jackson, supra,* at p. 1185.) The fact that defendant's freedom of movement was momentarily curtailed by the traffic stop thus does not determine whether he was seized. To answer that question we must return to the high court's definition of a "seizure."

■ A seizure occurs when the police, by the application of physical force or show of authority, seek to restrain the person's liberty (*Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *County of Sacramento v. Lewis, supra,* 523 U.S. at p. 844); the police conduct communicates to a reasonable innocent person that the person is not free to decline the officer's request or otherwise terminate the encounter (*Florida v. Bostick, supra,* 501 U.S. at p. 436); and the person actually submits to that authority (*Hodari D., supra,* 499 U.S. at p. 626) for reasons not "independent" of the official show of authority (*Florida v. Bostick, supra,* 501 U.S. at p. 436). Admittedly, the application of this test to particular circumstances is sometimes more an art than a science. (See *Michigan v. Chesternut, supra,* 486 U.S. at p. 573 [the test "is necessarily imprecise"].) As the high court has emphasized, "for the most part *per se* rules are inappropriate in the Fourth Amendment context. The proper inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.' " (*United States v. Drayton* (2002) 536 U.S. 194, 201 [153 L.Ed.2d 242, 122 S.Ct. 2105]; accord, *People v. Souza* (1994) 9 Cal.4th 224, 235 [36 Cal.Rptr.2d 569, 885 P.2d 982].) In this case, defendant has not shown that he, as the passenger, was the subject of the deputy's show of authority or that he actually submitted to it.

Deputy Brokenbrough's flashing lights were directed at the driver, Karen Simeroth, and not at defendant. Indeed, the record does not indicate that Brokenbrough was even aware defendant was in the car prior to the vehicle stop. Once the car came to a stop, the deputy approached the driver's side of the vehicle, without blocking defendant's exit, brandishing a weapon at him, or making any intimidating movements towards him. In these circumstances, one cannot say that defendant was the subject of the deputy's investigation or show of authority prior to the time the deputy ordered him out of the vehicle. (See *United States v. Drayton, supra,* 536 U.S. at pp. 203–204 [no seizure occurred when officers boarded the bus and began questioning passengers].)

■ Rather, "[a]n officer causing a vehicle to pull over in transit is conducting an investigatory stop of the *driver*." (*People v. Jackson, supra,* 39 P.3d at p. 1182, italics added.) "[T]he display of authority and control is directed at the driver, not the passenger." (*Id.* at p. 1185.) "While we are all familiar with the sinking feeling a driver experiences upon seeing police lights in the rearview mirror, few of us sense impending doom when we are in the passenger seat." (*Cartwright, supra,* 72 Cal.App.4th at pp. 1374–1375; see also *People v. Jackson, supra,* at p. 1185.) Thus, as the dissent concedes, "[a] passenger may not be the subject of a police investigation, at least in the initial phase of the traffic stop." (Dis. opn., *post,* at p. 1125.)

More importantly, defendant, as the passenger, had no ability to submit to the deputy's show of authority. As the *Cartwright* court noted, the passenger

"is not a participant in the stop, but an observer." (*Cartwright, supra,* 72 Cal.App.4th at p. 1375.) Not only is the driver the one the officer is seeking to restrain, but the driver is the only one who, by stopping the car, can submit to the officer's assertion of authority. The passenger may be asleep or otherwise unaware of the officer's presence. The passenger may disagree with the driver's decision to submit to the officer's authority and may even object vociferously, but to no effect. "The passenger simply has no say in the matter." (*Id.* at p. 1367.)

■    To be sure, the passenger must in most cases remain in the car until it stops, and to that extent (as the dissent points out) the passenger's freedom is curtailed. But it is critical, for purposes of the Fourth Amendment analysis, to determine *why* the passenger's freedom is curtailed. Although defendant points out that "it is simply not possible for a passenger to avoid being literally and physically detained under these circumstances, however momentarily," this is so because, under the vast majority of circumstances, it is unsafe for the passenger to exit a moving vehicle. The passenger will also, in most cases, prefer to await the completion of the traffic stop and continue en route in the company of the driver. Neither factor, however, means that the passenger has been seized within the meaning of the Fourth Amendment. (*Florida v. Bostick, supra,* 501 U.S. at p. 436 ["Bostick's freedom of movement was restricted by a factor independent of police conduct—*i.e.,* by his being a passenger on a bus"]; see generally *United States v. Drayton, supra,* 536 U.S. at p. 206 ["The arrest of one person does not mean that everyone around him has been seized by police"].) The "liberty" contemplated by the high court's definition of a seizure—i.e., "when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at *liberty* to ignore the police presence and go about his business" ' " (*Kaupp v. Texas* (2003) 538 U.S. 626, 629 [155 L.Ed.2d 814, 123 S.Ct. 1843], italics added)—refers not to whether the individual has the physical *capacity* to leave the scene but to whether, assuming the individual had the physical capacity to do so, he or she would feel free to depart or otherwise to conduct his or her affairs as though the police were not present. (See *Bostick, supra,* 501 U.S. at p. 436 [that "Bostick's movements were 'confined' . . . says nothing about whether or not the police conduct at issue was coercive"].) After all, an individual may manifest an unwillingness to engage with the police not only by departing the area, but also by staying put and declining to answer questions or otherwise ignoring police inquiries. Similarly, a seizure can occur even though the individual has the physical capacity to leave the scene.

Neither defendant nor the dissent ever explains why the same analysis should not apply to the detention of a *moving* vehicle containing a driver and passenger and the detention of a *parked* vehicle containing a driver and

passenger—or, for that matter, the detention of a motorcycle or a bicycle with a driver and passenger. (Cf. *United States v. Drayton, supra*, 536 U.S. at p. 204 [that the encounter took place on a bus rather than on the street "does not on its own transform standard police questioning of citizens into an illegal seizure"].) Absent some directive from the police, and as long as the *rules of the road are otherwise obeyed*, the passenger is free to do what the driver cannot—i.e., exit the vehicle or dismount from the motorcycle or bicycle and thereby terminate the encounter with the officer. (Cf. *U.S. v. Slater* (8th Cir. 2005) 411 F.3d 1003, 1005 [passenger was not seized while driver took field sobriety tests].) In this case, for example, defendant indicated his awareness of the available options by opening, and then closing, the passenger door.

The distinction between a passenger whose progress is stopped because the driver is seized and a passenger who is himself or herself seized is consistent with the high court's analysis in *Maryland v. Wilson, supra*, 519 U.S. 408, which addressed the separate issue whether a police officer may as a matter of course order not just the driver to exit the vehicle during a traffic stop, but the passengers as well. The high court found that in light of the interest in officer safety, ordering the passenger out of the vehicle was not an unreasonable seizure, but declined to decide whether the passenger could be held for the entire duration of the stop. (*Id.* at p. 415, fn. 3.) The high court did, however, acknowledge one important *distinction between the driver and the passengers*: "There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But *as a practical matter*, the passengers are already stopped by virtue of the stop of the vehicle." (*Id.* at pp. 413–414, italics added.) Justice Stevens's dissenting opinion agreed with the majority's implied distinction between being stopped as a *practical* matter and being seized as a *constitutional* matter: the intrusion on a passenger's freedom of movement occasioned by the traffic stop "was a necessary by-product of the lawful detention of the driver. But the passengers had not yet been seized at the time the car was pulled over, any more than a traffic jam caused by construction or other state-imposed delay not directed at a particular individual constitutes a seizure of that person." (*Id.* at p. 420 (dis. opn. of Stevens, J.).)

The rule proposed by defendant and endorsed by the Court of Appeal and the dissent here, in which a seizure occurs whenever the defendant's freedom of movement "is significantly curtailed by an officer's act of making the driver stop the car," would find a seizure in these circumstances of state-imposed delay. Indeed, the proposed rule would encompass even those motorists following the vehicle subject to the traffic stop who, by virtue of the original detention, are forced to slow down and perhaps even come to a halt in order to accommodate that vehicle's submission to police authority. It would be inaccurate to say that these motorists, whose journey is interrupted by virtue of the traffic stop of another vehicle but who do not actually submit

to the show of police authority, are seized within the meaning of the Fourth Amendment. The same is true of a passenger such as defendant, who likewise suffers a curtailment of his freedom but does not actually submit to the show of police authority.[4]

Defendant's proposed rule would also make unduly problematic the determination of when a seizure has ended. He asserts that "[w]hether a passenger remains detained thereafter may depend upon whether, under the circumstances, a reasonable person would feel free to leave while the officer deals with the driver." But very rarely does the officer affirmatively express an investigative interest (or lack thereof) in the passengers of a detained vehicle. The officer's interest in such circumstances, as defendant concedes, is with the driver. This suggests that, under defendant's approach, the alleged seizure of a passenger must terminate of its own accord, either by the passage of time or by the officer's focus on the driver. If the seizure terminates simply by the passage of time, then the question arises of how many minutes the passengers must wait. If, on the other hand, the seizure terminates at the end of the traffic stop or as soon as the officer tells the passengers they are free to leave, then it follows that the passengers are *also* at liberty to go about their business if, at an even earlier stage, the passengers can reasonably draw that same inference about the focus of the officer's investigation or show of authority. In this case, for example, defendant reasonably would have surmised that Deputy Brokenbrough was focused on the driver when the traffic stop was initiated. Because defendant knew he was free to ignore the police presence and go about his business at that stage, even if he was unable as a practical matter to leave the scene until the car came to a halt, he could not have been seized merely by the initiation of the traffic stop.

---

[4] The dissent asserts that the requirement of submission "simply does not apply in these circumstances" (dis. opn., *post*, at p. 1125), but, as the high court has made clear, a seizure "requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority. [¶] . . . 'There can be no arrest without either touching or submission.' " (*Hodari D.*, *supra*, 499 U.S. at pp. 626–627.)

Moreover, the dissent's analysis would effectively diminish protections for passengers. If, as the dissent contends, a traffic stop inflexibly results in a seizure of the passengers until the officer explicitly says otherwise, then any passenger who nonetheless tried to proceed on his or her way could be arrested under Penal Code section 148 (and then subjected to a search incident to the arrest) for resisting or delaying the officer in the performance of his or her duties. (See, e.g., *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329 [116 Cal.Rptr.2d 21]; *People v. Quiroga* (1993) 16 Cal.App.4th 961, 967 [20 Cal.Rptr.2d 446].) We think it more sensible to leave it up to the officer, once cause for the vehicle stop has been established, to decide who should be seized and when. And, in light of the high court's "clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account ' "all of the circumstances surrounding the incident" ' in each individual case" (*Michigan v. Chesternut, supra*, 486 U.S. at p. 572), it is also more appropriate to examine the totality of the circumstances before determining whether the passenger has been seized during a traffic stop.

The dissent would find that passengers generally, and defendant in particular, are seized from the inception of every traffic stop, but the dissent's reasoning is faulty. Although the dissent concedes that a passenger may not be the subject of the police investigation, at least in the initial phase of the traffic stop, it contends that a seizure nonetheless occurs because "the officer *has the authority*, as a matter of law, to order that the passengers . . . get out of the vehicle" once the vehicle pulls over. (Dis. opn., *post*, at p. 1123, italics added.) We do not doubt the officer has such authority, which is recognized explicitly in *Maryland v. Wilson, supra*, 519 U.S. at page 410, nor do we dispute that the passenger is seized once the officer *actually invokes that authority to order the passenger out of the car.* But the dissent offers no authority for its critical assumption that the mere *potential* an officer *might* invoke such authority itself constitutes a seizure.

The dissent also asserts that the failure to deem a passenger automatically seized in every traffic stop will lead to anomalous consequences in that the driver, who has been seized, will be able to suppress the fruits of an unlawful seizure, but the passenger, who has not been seized, may not be able to obtain such relief. If this is an anomaly, it is hardly unique, inasmuch as the potential for unequal treatment has existed under similar circumstances ever since the high court abolished automatic standing. In *Rakas v. Illinois, supra*, 439 U.S. 128, for example, the high court held that mere passengers—unlike drivers or owners of the vehicle—had no legitimate expectation of privacy that was violated by a vehicle search. (*Id.* at pp. 148–149; accord, *People v. Valdez, supra*, 32 Cal.4th at p. 122.) The high court has also remarked that a casual visitor would similarly be unable to challenge a house search (*Rakas, supra*, at p. 142; accord, *People v. Ooley* (1985) 169 Cal.App.3d 197, 202–203 [215 Cal.Rptr. 112]; see also *People v. Ayala, supra*, 23 Cal.4th at p. 255 [invitee or social guest has no expectation of privacy in business premises]), although the owner or other residents would be able to do so.

■ Thus, the Fourth Amendment does not concern itself with "treat[ing] driver and passenger alike" in all circumstances (dis. opn., *post*, at p. 1127), nor does assuring equity between drivers and passengers justify expanding the reach of the exclusionary rule beyond what the Fourth Amendment requires. (See *Alderman v. United States* (1969) 394 U.S. 165, 174 [22 L.Ed.2d 176, 89 S.Ct. 961] ["There is no necessity to exclude evidence against one defendant in order to protect the rights of another"].) " 'Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected.' " (*In re Lance W.* (1985) 37 Cal.3d 873, 882 [210 Cal.Rptr. 631, 694 P.2d 744], quoting *Rakas v. Illinois, supra*, 439 U.S. at p. 137.) Accordingly, "the deterrent purpose of the exclusionary rule does not require its application

when unlawfully seized evidence is offered against a defendant whose own rights have not been compromised by the unlawful seizure." (*Lance W.*, at p. 882.)

■ We emphasize that passengers who are in vehicles subjected to unjustified traffic stops are not without constitutional protection. Once the vehicle has been stopped, the passenger may not be detained thereafter without reasonable suspicion the passenger is involved in criminal activity. (*People v. Souza, supra,* 9 Cal.4th at p. 230; cf. *Maryland v. Wilson, supra,* 519 U.S. at p. 410 [police may order the driver and passengers of a "lawfully stopped" car to exit the vehicle].) Furthermore, neither the passenger nor the passenger's belongings in the vehicle may be searched without lawfully acquired cause to justify an arrest (*New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]) or a search (*Wyoming v. Houghton* (1999) 526 U.S. 295 [143 L.Ed.2d 408, 119 S.Ct. 1297]). A passenger in a car subjected to an unjustified stop may also be able to prosecute a civil suit against the police under the rubric of substantive due process. (See *County of Sacramento v. Lewis, supra,* 523 U.S. at pp. 844–845.) There is thus no need to torture the definition of a seizure to protect the security of passengers.

■ We therefore hold that because the deputy effected a traffic stop of Simeroth's vehicle without any indication that defendant, the vehicle's passenger, was the subject of his investigation or show of authority, defendant was not seized when Simeroth submitted to the deputy's show of authority and brought the vehicle to a stop. Because defendant claims only that the traffic stop itself constituted a seizure, we need not consider whether defendant was seized when Deputy Brokenbrough asked him to identify himself or whether, assuming such conduct constituted a seizure, it was justified by the deputy's reasonable suspicion that he was a parolee at large.

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., and Chin, J., concurred.

**CORRIGAN, J.,** Dissenting.—I respectfully dissent. Passengers in a vehicle pulled over for a traffic stop are not free to leave, in either a practical or a constitutional sense. Certainly no one can safely leave the vehicle before it stops. Once it has pulled over, the officer has the authority, as a matter of law, to order that the passengers remain inside (*People v. Castellon* (1999) 76 Cal.App.4th 1369, 1374–1375 [91 Cal.Rptr.2d 204]), or get out of the vehicle (*Maryland v. Wilson* (1997) 519 U.S. 408, 410 [137 L.Ed.2d 41, 117 S.Ct. 882]). This authority is soundly based on the need to protect the officer's

safety. One of its necessary consequences, however, is that the passengers, having been forced to interrupt their journey, are deprived of further freedom of movement. Accordingly, the passengers have been detained and thus "seized" for Fourth Amendment purposes.

The precedents cited by the majority support this conclusion, or are distinguishable. Under the *Mendenhall* test, a person is detained if, under the circumstances, "a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 100 S.Ct. 1870].) When a police officer effects a traffic stop, a passenger's freedom of movement has been restrained by the intentional act of a government agent. (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 844 [140 L.Ed.2d 1043, 118 S.Ct. 1708].) The passenger is detained for a reason that is not "independent of police conduct." (*Florida v. Bostick* (1991) 501 U.S. 429, 436 [115 L.Ed.2d 389, 111 S.Ct. 2382].) Indeed, the passenger's freedom of movement is abruptly interrupted precisely because of the officer's conduct.

The situation was quite different in *Bostick*. There, the defendant was a passenger sitting on a parked bus. When the officers boarded he was going nowhere. His freedom of movement was not curtailed by anything the officers said or did. (*Florida v. Bostick, supra,* 501 U.S. at pp. 431–432, 436.) Further, the *Bostick* court did not hold that there was no seizure. It simply rejected the state court's conclusion that officers may not ask bus passengers for consent to search. (*Id.* at p. 437.) As Justice O'Connor pointed out for the majority, well-settled Fourth Amendment jurisprudence would have allowed the officers to ask Bostick for his consent to search in the terminal, on the street, or in an airport. (501 U.S. at p. 434.) The mere fact that consent to search was sought on a parked bus was not dispositive.

*California v. Hodari D.* (1991) 499 U.S. 621 [113 L.Ed.2d 690, 111 S.Ct. 1547] does hold that submission to governmental authority is required for a detention to take place. Hodari and other young men were standing on a street and fled when police drove by. Hodari discarded contraband as he ran from an officer. The Court of Appeal suppressed the evidence on the ground that Hodari was detained when he saw the officer running toward him. (*Id.* at pp. 622–623.) The United States Supreme Court reversed, ruling that when a suspect does not yield to a show of authority, no seizure occurs. (*Id.* at p. 626.) Flight is clearly not the same as submission. However, the *Hodari D.* court had no occasion to consider anything like the situation of passengers during a traffic stop.

A passenger may not be the subject of a police investigation, at least in the initial phase of the traffic stop.[1] Passengers are detained for a different and equally important purpose: to ensure the safety of the officer. The actual submission requirement discussed by the *Hodari D.* court simply does not apply in these circumstances, which present entirely distinct practical and legal considerations.[2] Individuals on the street submit to an officer's authority by stopping or remaining in place in response to the officer's directions. An individual who sees a policeman and runs away has demonstrably not submitted to police authority.

Vehicle passengers are in a different situation. They stop when the car stops. If the driver pulls over in response to an officer's show of authority, the passengers' freedom of movement is curtailed to the same extent as the driver's. As the majority notes, "a police officer may as a matter of course order not just the driver to exit the vehicle during a traffic stop, but the passengers as well." (Maj. opn., *ante*, at p. 1120; see *Maryland v. Wilson, supra*, 519 U.S. at p. 410.) The officer may also order the passengers to stay in the car. (*People v. Castellon, supra*, 76 Cal.App.4th at pp. 1374–1375; *U.S. v. Moorefield* (3rd Cir. 1997) 111 F.3d 10, 12–13.)[3] This per se rule, based on the need to ensure officer safety, requires no showing of reasonable suspicion. (*Maryland v. Wilson, supra*, 519 U.S at p. 412.) Driver and passenger alike are "subjected to the demands and control of the police officer" during the stop. (*U.S. v. Kimball* (1st Cir. 1994) 25 F.3d 1, 5.)

---

[1] In some cases, of course, the officer initiates a traffic stop to investigate a passenger. (See, e.g., *In re William J.* (1985) 171 Cal.App.3d 72, 77 [217 Cal.Rptr. 163].) In those cases, the vehicle's occupants will often be unaware of the reason for the stop. Nevertheless, the rule adopted in the majority opinion requires the suspect to realize that he or she is the focus of the officer's investigation for the Fourth Amendment to apply.

[2] The majority reasons that if passengers are detained during a traffic stop for Fourth Amendment purposes, they would be subject to prosecution for fleeing from a proper investigative detention (Pen. Code, § 148) if they attempt to leave the scene. (Maj. opn., *ante*, at p. 1121, fn. 4.) However, that liability would arise only after a passenger became the subject of the officer's investigation. For this purpose, the rule proposed by the majority functions well. Penal Code section 148 would apply to passengers who flee in circumstances that would indicate they were the subject of the officer's investigation.

[3] While the United States Supreme Court has yet to address whether passengers may be ordered to remain in a vehicle during a traffic stop, the reasoning of the *Castellon* and *Moorefield* courts on this point is sound. The same considerations of officer safety that justify the rule authorizing the removal of passengers from a vehicle support allowing the officer to keep the passengers inside. (*People v. Castellon, supra*, 76 Cal.App.4th at pp. 1374–1375; *U.S. v. Moorefield, supra*, 111 F.3d at p. 13; see also *State v. Shearin* (2005) 170 N.C.App. 222 [612 S.E.2d 371, 377–378] [citing cases]; cf. *Maryland v. Wilson, supra*, 519 U.S at p. 413.) A rule permitting passengers to leave the vehicle and wander around outside the officer's field of vision during a traffic stop would be a dangerous one indeed.

I would disapprove *Castellon*, however, insofar as it held that passengers are not detained from the inception of a traffic stop. (*People v. Castellon, supra*, 76 Cal.App.4th at pp. 1373–1374.)

The *Wilson* court observed that "[o]n the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers." (*Maryland v. Wilson, supra,* 519 U.S at p. 413.) The court decided the intrusion on passengers' liberty is nevertheless justified, partly because "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle." (*Id.* at pp. 413–414.) By stopping the vehicle, the officer has exerted authority over everyone in it. Because the liberty interest of passengers is *stronger* than that of drivers, they too should be afforded the protections of the Fourth Amendment.

To conclude that passengers are free to leave the scene until an officer actually exercises the authority granted by *Wilson* (maj. opn., *ante,* at p. 1122), overlooks the fact that the officer has already interfered with the passengers' freedom of movement. It is not, as the majority suggests, the mere potential that an officer might order a passenger out of the car that results in a detention. It is also the prior actual application of the officer's authority in pulling the vehicle over. The stop gives rise to the officer's legitimate power under *Wilson* and *Castellon* to control the passengers' movements without any particularized justification. That official control differentiates passengers detained during a traffic stop from other citizens who are only incidentally impeded by an exercise of state authority. (See maj. opn., *ante,* at pp. 1120–1121.)

The majority's approach leads to anomalous consequences. For example, when an officer pulls over a car, the driver and passengers may all be considered to be in constructive possession of contraband found in the vehicle. Under the majority's rule, however, the driver would be protected by the Fourth Amendment but the passengers would not, even though the Supreme Court has described the passengers' liberty interest as stronger than the driver's. The majority also bars passengers from challenging the traffic stop if the officer arrests them before exerting any authority under *Wilson,* but would permit passengers to challenge the stop if the grounds for arrest were discovered after the officer gave directions controlling their movements. It is true, as the majority observes, that Fourth Amendment jurisprudence is not free of anomaly. (Maj. opn., *ante,* at p. 1122.) However, when given the opportunity, we should eschew incongruity. Surely consistency is preferable to anomaly.

I would hold that passengers are "seized" from the time a car is pulled over until the officer ends the restraint on their liberty, either by telling them they are free to leave or by releasing the occupants of the vehicle after completing the traffic stop. This approach satisfies the majority's concern with determining when a seizure ends. (Maj. opn., *ante,* at p. 1121.) It provides a clear and

easily applied rule, and imposes no additional burdens on law enforcement. It is consistent with the policy of granting police officers broad latitude to control the movements of passengers during traffic stops. It treats driver and passenger alike, protecting and clarifying their rights and obligations.

The majority contends such a per se rule is inconsistent with Fourth Amendment jurisprudence requiring consideration of all the circumstances of the individual case in determing whether there has been a "seizure." (Maj. opn., *ante*, at p. 1121, fn. 4.) However, the *Wilson* court made an express exception to the usual practice of avoiding bright-line rules in the Fourth Amendment context when it decided that passengers, like drivers, may routinely be ordered to leave the vehicle during a traffic stop. (*Maryland v. Wilson, supra*, 519 U.S at p. 413, fn. 1.) The per se rule of *Wilson* justifies the rule proposed here. Because, as a matter of law, passengers' freedom of movement is subject to the control of the officer during a traffic stop, passengers should be permitted as a matter of law to challenge the legality of the stop. No conflict with the body of Fourth Amendment law arises from this commonsense approach. Further, the analysis takes into account the most relevant circumstance: the passengers' freedom has been limited by the officer's exercise of authority.

The majority expresses concern about unduly expanding the reach of the exclusionary rule. (Maj. opn., *ante*, at p. 1122.) However, no evidence discovered during the course of a legally justified traffic stop would be affected if we held that passengers are seized along with drivers. The majority acknowledges that most jurisdictions have accepted that rule, and the weight of authority on this point is indeed substantial. Eight of the federal circuit courts of appeal hold that passengers are detained during a traffic stop.[4] There are no cases on point from the other four circuits. Twenty-one state courts have adopted the same view.[5] The majority refers to only two states where its

---

[4] See *U.S. v. Woodrum* (1st Cir. 2000) 202 F.3d 1, 5 (characterizing the rule as "doctrinal bedrock"); *U.S. v. Rusher* (4th Cir. 1992) 966 F.2d 868, 874, footnote 4; *U.S. v. Grant* (5th Cir. 2003) 349 F.3d 192, 196; *U.S. v. Perez* (6th Cir. 2003) 440 F.3d 363, 369; *U.S. v. Powell* (7th Cir. 1991) 929 F.2d 1190, 1195; *U.S. v. Green* (8th Cir. 2001) 275 F.3d 694, 699; *U.S. v. Twilley* (9th Cir. 2000) 222 F.3d 1092, 1095; *U.S. v. Eylicio-Montoya* (10th Cir. 1995) 70 F.3d 1158, 1162–1164.

[5] See *State v. Gomez* (2000) 198 Ariz. 61 [6 P.3d 765, 766]; *State v. Bowers* (1998) 334 Ark. 447 [976 S.W.2d 379, 381]; *State v. Hernandez* (Fla.Dist.Ct.App. 1998) 718 So.2d 833, 836; *State v. Cooper* (2003) 260 Ga.App. 333 [579 S.E.2d 754, 756]; *State v. Haworth* (1994) 106 Idaho 405 [679 P.2d 1123, 1124]; *People v. Bunch* (2003) 207 Ill.2d 7 [277 Ill.Dec. 658, 796 N.E.2d 1024, 1029]; *McKnight v. State* (Ind.Ct.App. 1993) 612 N.E.2d 586, 588; *State v. Eis* (Iowa 1984) 348 N.W.2d 224, 226; *State v. Hodges* (1993) 252 Kan. 989 [851 P.2d 352, 360–362]; *In re Albert S.* (1995) 106 Md.App. 376 [664 A.2d 476, 480–481]; *State v. Harms* (1989) 233 Neb. 882 [449 N.W.2d 1, 4–5]; *State v. Scott* (1994) 110 Nev. 622 [877 P.2d 503, 508]; *State v. Creech* (Ct.App. 1991) 111 N.M. 490 [806 P.2d 1080, 1082] (but see *State v. Affsprung* (Ct.App. 2004) 2004 NMCA 38 [135 N.M. 306, 87 P.3d 1088, 1092–1094]); *People v. Smith* (1984) 106

analysis is followed.[6] If the results of permitting passengers to challenge traffic stops were crippling to law enforcement, one would expect the practice to be less widely followed. At least one state, Wisconsin, has reconsidered and rejected its former minority view. (*State v. Harris, supra,* 557 N.W.2d at pp. 248, 251.) The majority opinion provides no sound basis in reason or policy to depart from the rule followed in nearly all other jurisdictions that have considered the question. California too should grant passengers the same Fourth Amendment rights as drivers during traffic stops.

Werdegar, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied August 30, 2006. Werdegar, J., Moreno, J., and Corrigan, J., were of the opinion that the petition should be granted.

---

A.D.2d 525 [483 N.Y.S.2d 62, 63]; *State v. Carter* (1994) 69 Ohio St.3d 57 [1994 Ohio 343, 630 N.E.2d 355, 360]; *State v. Scott* (1982) 59 Ore.App. 220 [650 P.2d 985, 987], and footnote 4 (relying on statute, but noting that Fourth Amendment protected passenger's expectation not to be stopped without reasonable suspicion); *State v. Wilson* (2004) 2004 SD 33 [678 N.W.2d 176, 181]; *Kothe v. State* (Tex.Crim.App. 2004) 152 S.W.3d 54, 61; *State v. Harris* (1996) 206 Wis.2d 243 [557 N.W.2d 245, 251]; *Parkhurst v. State* (Wyo. 1981) 628 P.2d 1369, 1374 (relying on state constitution); *State v. Ottesen* (Utah Ct.App. 1996) 920 P.2d 183, 185.

[6] See *People v. Jackson* (Colo. 2002) 39 P.3d 1174, 1184–1186; *State v. Mendez* (1999) 137 Wn.2d 208 [970 P.2d 722, 729]; maj. opn., *ante,* at page 1115.

The Delaware courts appear to acknowledge that the majority opinion's view is technically correct, but nevertheless permit passengers to challenge the basis for a traffic stop. (*Jarvis v. State* (Del. 1991) 600 A.2d 38, 41, fn. 1; *Harris v. State* (Del.Super.Ct. 2002) 806 A.2d 119, 123, fn. 9.)

In *State v. Affsprung, supra,* 87 P.3d at pages 1092–1094, the New Mexico Court of Appeals assumed a passenger was not detained at the same time as a driver, and conducted a fact-specific analysis, without referring to an earlier New Mexico case holding that passengers may challenge the grounds for a traffic stop (*State v. Creech, supra,* 806 P.2d at p. 1082).