**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4281**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEREMIAH DUTY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, Chief District Judge.  (3:05-cr-00255-JRS)

———————

Submitted:  October 11, 2006        Decided:  November 7, 2006

———————

Before MICHAEL, MOTZ, and DUNCAN, Circuit Judges.

———————

Vacated and remanded by unpublished per curiam opinion.

———————

Michael S. Nachmanoff, Acting Federal Public Defender, Robert J. Wagner, Assistant Federal Public Defender, Frances H. Pratt, Research and Writing Attorney, Richmond, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Erik R. Smith, Special Assistant United States Attorney, Richmond, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Following the denial of his motion to suppress evidence, Jeremiah Duty was convicted of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000). Duty now appeals, arguing that the district court erred in denying his motion to suppress evidence. Duty asserts that he was improperly seized without reasonable suspicion of wrongdoing on his part. Because we conclude that the district court erred in denying the motion to suppress, we vacate and remand for further proceedings

This court reviews the district court's factual findings underlying a motion to suppress ruling for clear error, and the district court's legal determinations de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Bush, 404 F.3d 263, 275 (4th Cir. 2005). When a suppression motion has been denied, this court reviews the evidence in the light most favorable to the Government. United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005).

On March 31, 2005, Richmond police officer Crystal Winston ("Winston") was on a routine patrol of the 1900 block of Raven Street, in Richmond, Virginia. This portion of Raven Street is managed by the Richmond Redevelopment and Housing Authority ("RRHA") and is privatized, restricted only to residents and authorized guests.

While on patrol, Winston saw a gray Chevrolet vehicle parked in the cul-de-sac of the street with its engine running. Winston testified that the two occupants of the vehicle, later identified as Duty and Jonathan Bish, looked at her as she passed. Winston circled around the cul-de-sac, activated her emergency lights[*], and pulled behind the Chevrolet, stopping ten to fifteen feet behind the vehicle. Winston testified that she stopped "to see if they were ok, what their business was, and if they had a legitimate or social reason to be in the area." Bish and Duty made no move to leave when Winston pulled behind them.

Winston approached the driver's side of the Chevrolet, and asked Duty and Bish for identification to determine if either lived in the area. Winston ran the information, and learned that Duty had an outstanding arrest warrant. After confirming the warrant, Winston placed Duty under arrest. Winston conducted a search incident to arrest, during which she found several rounds of .22 caliber ammunition, a syringe, and several pills on Duty's person. Winston also searched the trunk of the Chevrolet, in which she found a .22 caliber rifle.

---

[*]The district court made a factual determination that the emergency lights on top of Winston's vehicle were flashing when she pulled behind the parked car in which Duty and Bish were sitting. Both Duty and Bish unequivocally testified that the lights were flashing on top of the police car. Winston, on the other hand, could not affirmatively recall whether the lights were activated when she stopped behind the car in which Duty and Bish were sitting. Therefore, this factual determination was not clearly erroneous.

Duty filed a motion to suppress the evidence, alleging that it was obtained from an improper seizure. After a hearing, the district court denied the motion to suppress. The district court found that it was proper for Winston to approach Duty and ask for identification. Once Winston discovered Duty's outstanding warrant, the district court found that Winston acted properly by arresting Duty, and searching him incident to arrest. Although the search of the trunk exceeded the scope of the search incident to arrest, the district court found that the rifle inside of the trunk would have been inevitably discovered because the car was impounded and inventoried. Following his conviction, Duty filed a timely notice of appeal.

The issues on appeal are whether Duty was seized for purposes of the Fourth Amendment, and if so, whether the seizure violated Duty's Fourth Amendment rights. "The Fourth Amendment protects 'the people' against 'unreasonable searches and seizures.'" United States v. Hylton, 349 F.3d 781, 785 (4th Cir. 2003) (quoting U.S. Const. amend. IV), cert. denied, 541 U.S. 1065 (2004). A person is considered "seized" for Fourth Amendment purposes if, under the totality of the circumstances, a reasonable person in the position of the suspect would believe that he or she was not free to leave or to terminate the encounter. Florida v. Bostick, 501 U.S. 429, 436-37 (1991). "Because the test [to determine whether a person has been seized for purposes of the

Fourth Amendment] is an objective one, its proper application is a question of law." United States v. Sullivan, 138 F.3d 126, 133 (4th Cir. 1998).

Winston seized Duty for purposes of the Fourth Amendment when she activated the emergency lights on top of her car and pulled behind the parked car in which Duty was sitting. Through this action, Winston displayed an unmistakable show of authority that would give a reasonable person the impression that he was not free to leave. See Brower v. County of Inyo, 489 U.S. 593, 597-98 (1989); Michigan v. Chestnut, 486 U.S. 567, 575 (1988). Thus, the district court erred in finding the initial encounter consensual.

Because Duty was seized for Fourth Amendment purposes, Winston was required to have reasonable suspicion. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see Terry v. Ohio, 392 U.S. 1, 30 (1968). To conduct a Terry stop, there must be "at least a minimal level of objective justification for making the stop." Wardlow, 528 U.S. at 123; see also United States v. Hensley, 469 U.S. 221, 232 (1985). Reasonable suspicion requires more than a hunch but less than probable cause, and it may be based on the collective knowledge of officers involved in an investigation. Id.

In assessing police conduct in a Terry stop, courts must look to the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989). Officers conducting a lawful Terry stop may take steps reasonably necessary to protect their personal safety, check for identification, and maintain the status quo. Hensley, 469 U.S. at 229, 235; see also United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987) (brief but complete restriction of liberty is valid under Terry).

We find that Winston lacked the reasonable suspicion necessary to seize Duty. The only evidence presented was that Duty was sitting in an idle car on a private street, and looked at Winston when she drove by. Such evidence plainly does not provide a basis for reasonable suspicion.

Accordingly, the seizure was invalid because Winston did not possess articulable, reasonable suspicion that criminal activity was afoot when she pulled behind Duty with the emergency lights activated. Because the seizure was illegal, the district court erred in denying Duty's motion to suppress evidence.

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED