GREGORY, Circuit Judge,
dissenting:
The majority has forthrightly stated the test that applies to this ease: “[U]nder controlling Supreme Court precedent, when an individual attempts to evade a seizure and reveals evidence or contraband prior to submission to police authority, the Fourth Amendment’s exclusionary rule does not apply.” Maj. Op. 1000-01 (emphasis added). Its application to the facts presented by this case, however, should guide this Court to a different conclusion than that reached by my colleagues in the majority.
Although I do not disagree with the majority’s recitation of the facts as such, several significant factual elements should particularly inform the analysis and therefore deserve greater emphasis. These facts are: ' (1) that the relevant show of authority made by police consisted only of turning on the police vehicle’s overhead lights and blocking in Stover’s truck; (2) that this was not a normal traffic stop case because Stover’s vehicle was already parked when police made this show of authority; (3) that Stover was, at all times, within one to two feet of his vehicle; and (4) that Stover’s actions demonstrated a clear intent to abandon his weapon and disarm himself in response to police authority. Similarly, while I do not disagree with the majority’s conclusion that under California v. Hodari D., 499 U.S. 621, 623, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), a suspect must submit to an officer’s show of authority for a constitutional seizure to exist, it is important to note that such submission can take either of two forms: an affirmative signal of compliance or passive acquiescence. Brendlin v. California, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). A more thorough application of this bifurcated legal test,* especially in light of the particular facts I have highlighted, produces a different result and I therefore respectfully dissent.
I.
A.
This case turns on whether the appellant, Stover, failed to submit to the offi *1002 cers’ show of authority. The first point of departure between my view and the majority’s with respect to this inquiry is, as noted above, that the majority treats this ease as it would a run-of-the-mill traffic stop. Doing so results in the application of the submission test from Hodari D., and accordingly the majority places great significance on the fact that Stover did not “signal compliance.” Maj. Op. 996 n. 2, 998, 1000. This, of course, would have been easy had Stover been driving: Just as the suspect in Hodari D. would have been seized if he had stopped running when police gave chase, Stover would have been seized if he had pulled his car over when police pulled behind him with their overhead lights flashing. But Stover was already parked and thus unable to “signal” his submission. Accordingly, the test from Brendlin, not that from Hodari D., must govern.
In Brendlin, police stopped a moving vehicle occupied by a driver and a passenger. While the driver clearly submitted by pulling the car over, the passenger, Brendlin, did nothing to signal submission. Brendlin, 551 U.S. at 252, 255-56, 127 S.Ct. 2400. Just like Stover, Brendlin was merely in h car already stopped by the police and therefore “had no effective way to signal submission.” Id. at 262, 127 S.Ct. 2400. Brendlin was seized just as surely as the driver was, id. at 256-58, 127 S.Ct. 2400, but since there was no opportunity for him to signal submission (or any expectation for him to do so), the Court could not use Hodari D. to determine when the seizure began. Id. at 255, 127 S.Ct. 2400. The Court therefore recognized that different tests had to be applied to the driver who could signal submission and the passenger who could not. The correct test for the passenger, the Court said, was whether his “submission ... [took] the form of passive acquiescence',” thereby unanimously reversing the California Supreme Court’s holding that submission could not occur without an affirmative signal of compliance. Id.; see People v. Brendlin, 38 Cal.4th 1107, 45 Cal.Rptr.3d 50, 136 P.3d 845, 852 (2006) (finding that submission did not occur because the “defendant, as the passenger, had no ability to submit to the deputy’s show of authority”), vacated sub nom. Brendlin, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132. The passive acquiescence test clearly applies to Stover under the facts of this case because, although he owned and most likely drove the truck, the vehicle was parked and turned off when the stop began, making his position analytically indistinguishable from that of the passenger in Brendlin.
I must also disagree with my colleagues’ conclusion that the verbal commands issued by the police officers, ordering Stover back into the truck, constitute the relevant show of authority for our analysis. The majqrity repeatedly emphasizes that Sto-ver did not comply with police commands to return to his vehicle. Maj. Op. 997 n. 3, 998, 999, 1000. However, “[t]he verbal directive from the officers not to leave was not the initiation of the seizure, but rather an affirmation that [Stover] was not free to leave.”- United States v. Black, 707 F.3d 531, 538 (4th Cir.2013). The initial show of authority occurred when police pulled their vehicle in behind Stover’s with the overhead lights flashing and blocked his vehicle in-and submission to this show of authority would complete the seizure. See Hodari D., 499 U.S. at 629, 111 S.Ct. 1547 (“Perto-so’s pursuit ... constituted a ‘show of authority’ enjoining Hodari to halt, [and] since Hodari did not comply with that injunction he was not seized until he was tackled.” (emphasis added)). Although it might be tempting to view the police commands as relevant, see Maj. Op. 997 n. 3, controlling Supreme Court precedent does not allow us to do so. Brendlin states unequivocally that in a passive acquiescence case, the “test for telling when a *1003 seizure occurs in response to authority” comes from United, States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), which states that a seizure occurs when, “in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” 551 U.S. at 255, 127 S.Ct. 2400. Common sense says that occurred when the police pulled behind Stover’s vehicle with their overhead lights flashing. United States v. Duty, 204 Fed.Appx. 236, 239 (4th Cir.2006) (unpublished) (“Winston seized Duty for purposes of the Fourth Amendment when she activated the emergency lights on top of her car and pulled behind the parked car in which Duty was sitting.”). Thus, when the police gave their commands that Stover should return to his vehicle, he was already seized (provided Stover acquiesced, which, I will demonstrate, he did according to the majority’s own test).
The district court made the same error, and this alone is sufficient to reverse its decision. It incorporated irrelevant facts into its analysis of the submission question by relying on Stover’s failure to return to his vehicle as ordered. Moreover, where an individual submits to the initial show of authority, imperfect compliance (or even noncompliance) with subsequent police orders “does not nullify the fact that he initially submitted” and was therefore seized. United States v. Brown, 401 F.3d 588, 595 (4th Cir.2005) (holding that the suspect remained seized despite repeatedly disobeying orders to place and keep his hands on the car). It is therefore irrelevant that Stover’s response to the police orders “may have suggested that he might stop submitting to the officers’ assertion of authority and possibly attempt to flee the scene or confront the officers.” Id. If the record shows that Stover submitted to the initial vehicular show of authority, it will be established “that when Officer [Halsey] expressly told [Stover] he could not leave, [Stover] was already seized for purposes of the Fourth Amendment.” Black, 707 F.3d at 538.
B.
Therefore, the relevant question in this case becomes: Did Stover passively acquiesce to the vehicular show of authority? Supreme Court precedent makes it clear that he did.
In Brendlin, the Court said that when police make a vehicular stop “a sensible person would not expect [the] police officer to allow people to come and go freely from the physical focal point of [the] investigation.” 551 U.S. at 257, 127 S.Ct. 2400. In other words, controlling precedent says that what the police did in this case— pulling behind a stopped vehicle with overhead lights flashing — amounted to a command not to leave the scene. And no reasonable assessment of the facts can support the conclusion that Stover attempted to leave. To be sure, he exited his vehicle. But the majority acknowledges, as did counsel for the government at oral argument, that a person exiting a vehicle after police have made this show of authority does not, by itself, break or nullify the seizure. To passively acquiesce, Stover merely had to remain at the focal point of the police investigation rather than attempting to flee, evade the seizure, or jeopardize the safety of police. See United States v. Lowe, 791 F.3d 424, 433 (3d Cir.2015); Kansas v. Smith, 286 Kan. 402, 184 P.3d 890, 896 (2008).
The majority concludes that Stover was attempting to evade the police seizure. But the factual record makes the purpose of Stover’s actions quite clear: He wanted to abandon incriminating evidence. Stover knew he was not supposed to be in possession of a handgun, and he clearly sought to hide that evidence before it was discovered by the police. But abandoning contraband *1004 is not inconsistent with passive acquiescence, as the majority itself ably demonstrates. Maj. Op. 21. Stover’s conduct may be accurately described as “evasive,” but only with respect to the search Stover no doubt anticipated would follow the seizure, and not with respect to the seizure itself.
Evasion with respect to a seizure must necessarily involve an attempt not to be seized, that is, to get away. See Brendlin, 551 U.S. at 262, 127 S.Ct. 2400 (“[O]ne sitting in a chair may submit to authority by not getting up to run away.” (emphasis added)); see also Wayne R. LaFave, 4 Search & Seizure § 9.4(d) (5th ed. 2015) (“Thus it would appear that if a passenger were to exit the vehicle as soon as it stopped and then fled the scene, the seizure would not ‘take’ as to him.” (emphasis added)). Even if the government’s success below prevents us from finding that abandoning contraband was Stover’s only motivation for leaving his vehicle, see Maj. Op. 998 n. 4, we still lack any evidence that his motivation was to get away. Although I agree with the majority that outright flight is not always required to show non-submission, we must still find that Stover attempted to evade the seizure. According to the majority, we must infer that Stover thought taking a few quick steps towards the front of his vehicle and abandoning his gun would prevent the police from seizing him. That conclusion defies logic. As such, I depart from my colleagues and would find there is no record support for the contention that Stover attempted or intended to flee, evade the seizure, or jeopardize the safety of police.
The government’s assertion at oral argument that attempting to hide evidence is “another crime” and that committing such a crime precludes our finding submission, Oral Argument 20:20, is also incorrect. The argument depends on conflating evasion of a search with evasion of a seizure, an analytical step that is clearly flawed. After all, if a person is constitutionally seized and then balks at a police request to search his or her .person the Fourth Amendment seizure is not automatically terminated. Cf. Black, 707 F.3d at 538. (holding the suspect still seized after he realized he would be searched and attempted to leave). My colleagues in the majority appeared rightly skeptical of the government’s argument, and the Supreme Court has clearly demonstrated that it is submission to the attempted seizure that matters. Hodari D., 499 U.S. at 629, 111 S.Ct. 1547 (“Pertoso’s pursuit ... constituted a ‘show of authority’ enjoining Ho-dari to halt, [and] since Hodari did not comply with that injunction he was not seized until he was tackled.”).
Furthermore, I contend that when the contraband at issue is a loaded gun, abandonment should support a finding that the suspect was acquiescing more often than it impedes such a finding, because the suspect has disarmed himself in response to police authority. It would be odd if disarming oneself was taken as evidence of resistance, while remaining armed was taken as evidence of submission. But the majority, like counsel for the government, focuses on the fact that Stover walked away from police with his weapon either in hand or on his person. Would they find it more submissive if Stover had walked toward police armed with a loaded gun? Cf. United States v. Jones, 678 F.3d 293, 298 (4th Cir.2012) (finding a seizure where the suspect was armed throughout his encounter with police). The direction in which he moved is a technical detail that is clearly irrelevant so long as he remained at the focal point of the investigation without attempting to avoid or resist the seizure itself. The factual record demonstrates that Stover was never more than a couple of feet from the stopped vehicle, that he had no intention of leaving the scene, that *1005 he was submitting to being (illegally) seized, and that his evasive conduct was an attempt to thwart the looming police search by hiding evidence that could turn the seizure into an arrest.
Rather than allowing these facts to tell the story of what happened that evening, the majority relies on a strained comparison to our opinion in United States v. Lender, 985 F.2d 151 (4th Cir.1993), to suggest that a shootout with police was narrowly avoided — a proposition in no way supported by the record. In Lender, the initial (and therefore relevant) show of authority was a police command that the suspect, Lender, stop walking. He did not, instead continuing to walk while reaching for a gun held in his pants. Lender apparently fumbled the weapon, dropping it to the ground, and he then lunged for it as did the officers who were quickly approaching. Id. at 153-55. We correctly found Lender’s “conduct ... fully consistent with preparation to whirl and shoot the officers,” id. at 155, but that is not the case here.
First of all, Lender was a Hodari D. case (it is hard to imagine a case closer to the heartland of that precedent), and this case falls under Brendlin. Second, the record here is clear: Stover moved out of view of the police and then tossed his weapon on the ground. Officer Halsey testified that when he ran up to meet Stover in front of the truck he saw Stover already tossing the gun. Stover was not raising it to fire, and Officer Halsey specifically testified that Stover never brandished the weapon at the officers. Whereas Lender went for the gun he unintentionally dropped on the ground, clearly demonstrating a violent intent, Stover intentionally tossed his gun to the ground before Officer Halsey rounded the truck, clearly demonstrating a pacific intent. The cases are practically opposites.
If this were not enough, it is worth noting that for this Court to decide that Stover was preparing for a shootout, we would need to find that he was a particularly heartless and cowardly individual. Stover’s movements placed Ms. Chinn, a woman with whom he was on a first date, between himself and the police. Perhaps the majority believes the government has demonstrated that Stover was ready to use his daté as a human shield, but to me that seems to go beyond our duty to make all reasonable inferences in favor of the government. I believe looking at the evidence objectively forecloses the possibility that Stover was “prepar[ing] to whirl and shoot the officers” and that Lender neither assists the majority nor supports the district court’s decision.
Without evidence of flight, evasion, or resistance, on what basis can we conclude that Stover did not submit? The majority’s statement that “we do not disturb our observation in Wilson that ‘[pjhysical movement alone does not negate the possibility that a seizure may nevertheless have occurred’ ” runs contrary to its analysis. Maj. Op. 1001 (quoting United States v. Wilson, 953 F.2d 116, 123 (4th Cir.1991)). The officers used their vehicle and overhead lights to command Stover to stay in or near the car and await the further intrusions accompanying an illegal investigatory stop. He did so. Officers then demanded he get back in his car, and he did so after walking a short distance around his truck (remaining at the scene and within a. foot or two of the vehicle at all times) to abandon a weapon that he anticipated would get him arrested or killed. The majority believes the Fourth Amendment ceased to operate because of these several steps. I cannot agree, and I believe our own precedent and that of the Supreme Court requires a different outcome.
*1006 II.
Once it is established that the case falls under -Brendlin, the remainder of the analysis becomes quite easy. Stover passively acquiesced by doing exactly what the Supreme Court said he must do: He remained at the focal point of the investigation without attempting to avoid being seized. As a result, Brendlin tells us, the correct test for determining when he was seized comes not from Hodari D. but from Mendenhall. 551 U.S. at 255, 127 S.Ct. 2400. The seizure occurred at the point when, “in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. I agree with my colleagues that that line was crossed when the police pulled in behind Stover with their overhead lights flashing. Maj. Op. Part III (“[0]n appeal [the government] argues that ‘a reasonable person would have felt free to leave’ when the police arrived. We disagree.” (internal citation omitted)). Because the weapon was both abandoned and discovered after the seizure was complete, I believe the district court’s denial of the motion to suppress was in error and that we should reverse.
III.
To reiterate, the majority has stated the proper rule for this case, it simply has not applied it in light of all of the relevant facts. Having stated my reasons for dissenting, I now address the position the majority’s decision places our Circuit in with respect to other courts. We are not the first circuit to adopt the rule — or perhaps I should say, to articulate the rule— that in light of Brendlin a seizure is accomplished when police make a show of authority that goes unresisted. The Third Circuit has said that “failure to submit has been found where a suspect takes action that clearly indicates that he ‘does not yield’ to the officers’ show of authority. Action — not passivity — has been the touchstone of our analysis.” Lowe, 791 F.3d at 433 (citing Hodari D., 499 U.S. at 626, 111 S.Ct. 1547). The court went on to note that flight is not the only action that would show resistance and that evasion or threatening behavior would also demonstrate a lack of submission. Id. We would also not be the first court to apply Brendlin’s focal point test — the Kansas Supreme Court did so just one year after Brendlin was decided. Smith, 184 P.3d at 896.
Instead of following these well-reasoned opinions, the majority appears to be tacitly influenced by a more troubling precedent from the Tenth Circuit, which in United States v. Salazar, 609 F.3d 1059 (10th Cir.2010), adopted a “reasonable officer” standard for analyzing submission. 609 F.3d at 1065 (“[W]e consider whether a citizen has submitted to authority by examining the view of a reasonable law enforcement officer under the circumstances.”). The majority notes that u[t]o Officer Halsey, [Stover’s] movement away from the police car looked like ‘flight.’ ” Maj. Op. 993 (emphasis added); see also Maj. Op. 998 n. 4 (“Officer Halsey testified at the suppression hearing that he believed Stover might have fled the scene had the officer not confronted him at the hood of the ear.”). The majority goes on to cite several inapposite cases from our sister circuits, each of which employs the perspective of the officers or conflates evasion of a search with evasion of a seizure. Maj. Op. 999-1000. Salazar is among these. I take only limited comfort from the majority’s statement that “we do not necessarily adopt the lower standards of submission recognized in some of these cases.” Maj. Op. 1000 (emphasis added). The Tenth Circuit has offered no analytical basis for its “reasonable officer” rule (aside from an assertion that objective rules are preferred for Fourth Amendment questions, Salazar, 609 F.3d at 1064), and I can find no other *1007 circuit that has adopted the test explicitly. We should not be the first. Indeed, we must not be, as the Tenth Circuit’s test flies in the face of our own precedent in Brown which, as discussed above, found it irrelevant that a suspect’s behavior “may have suggested that he might stop submitting to the officers’ assertion of authority.” 401 F.3d at 595.
Fortunately the majority’s opinion does not, and cannot, adopt the “reasonable officer” test. The test does not deserve the slightest credence. I hope my words of caution will keep us tightly moored to our precedent in Brown, and that no en banc panel ever drifts to such a standard in the future.

 To keep the analysis clear, I will refer to these as different “tests” under the submission inquiry. But I agree with my colleagues in the majority that passive acquiescence is a form of submission and that Brertdlin therefore applies Hodari D. rather than articulating a new rule. Maj. Op. 995-96 & n. 2. However, passive acquiescence and signaling compliance are sufficiently different forms of submission, requiring us to answer sufficiently different questions, that I do not think calling them different "tests” is inappropriate.